## KEATTS vs. FOWLER'S DEVISEES.

Under the Territorial Statute, a decree in chancery related to the first day of the term, and was a lien upon the lands of the defendant on that day ; and a regular sale under a decree conveyed a title superior to that of a purchaser after the first day of the term, but prior to the day the decree was actually made.

The statute of limitations runs in favor of a purchaser at a judicial sale from the day of the sale, though he may never have been in the actual possession of the land, (*Mithell vs. Etter ante.*)

### *Appeal from Pulaski Chancery Court.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

Argued before Mr. Chief Justice ENGLISH, Mr. Justice COMPTON, and Hon. H. FLANAGIN, Special Judge.

HEMPSTEAD, for the plaintiff.

The first and most important enquiry is, whether the decree

under which Fowler claimed, was a lien at all; and if so, whether it had relation to the first day of the term at which it was rendered, and the lien dated from that point of time. Under the law existing at the time, judgments at law, entered in any court of record within the territory of Arkansas, were a lien on the lands of the judgment debtor for five years. *Ter. Dig* 339. The statute does not say, or mean, that a judgment lien shall *commence,* or *be dated* from the *first* day of the term. It is said in *Co. Lit.* 102 *a,* that a judgment in a personal action, binds lands only from the day of the judgment given. Decrees in chancery were not a lien at all. 2 *P. Wms.* 622. The time a judgment was given as shown by the record, has always been the criterion for determining as to the commencement of the lien. *Co. Rep.* 131; *Cro. Jac.* 451; *Munfree vs. Carmack,* 4 *Yerger* 270; *Quinn vs. Wiswall,* 7 *Ala.* 645; 2 *Stew-* 401; 5 *Misso.* 510.

The language of the statute of limitation, upon which Keatts relies, is very broad and comprehensive :

" *All actions* against the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales, *shall be brought within five years after the date of such sale, and not thereafter.*" *Gould's Digest* 749.

The statute does not require possession as a pre-requisite to bringing an action. It says nothing about possession ; nor does it imply that there shall be any. But, on the contrary, it expressly negatives that idea, by fixing the date of the sale as the true point of time from which the statute commences running.

STILLWELL & WOODRUFF, contra.

The territorial statute, *section* 9, *page* 116, *Steele & McC. Dig.,* in connection with *section* 70, *page* 59, clearly made decrees relate to the first day of the term at which they were rendered. But independent of the territorial statute, the judgments of the territorial court had relation to the first day of the term, and bound the estate of the defendant. 2 *Tidd's Pr.* 849,

850; *Wynne vs. Wynne*, 1 *Wils. Rep.* 36 ; 3 *Burr.* 1496; 2 *N. Car. Rep. (Hawk.)* 233. · The whole term in contemplation of law, is but one day. 11 *Arks. Rep.* 348; 13 *Ib.* 673 ; 4 *Munf. Rep.* 541; 3 *McLean Rep.* 235; 6 *How. (Miss.) Rep.* 566; *Scriba vs. Deas*, 1 *Brock. Rep.* 169.

If the statute of limitation cuts any figure in this case, either upon the original or cross-bill, it is perfectly clear that the decree is right.

Mr. Justice COMPTON delivered the opinion of the court.

The original bill was exhibited by Absalom Fowler, on the 10th February, 1857, against James B. Keatts and others, to quiet the alleged title of the complainant to certain lands, lying in Pulaski county, and known as the N. W. ¼ section 25, and N. E. ¼ section 26, T. 1, R. 25 West. Keatts answered the bill, and making his answer a cross-bill, asserted title in himself, and prayed that Fowler's deed might be canceled. At the hearing the Chancellor dismissed the cross-bill, and rendered a decree on the original bill quieting Fowler's title.

The lands in controversy were patented by the United States on the 1st December, 1830, to Dennis Trammell, who, by deed dated 6th July, 1836, conveyed them to Elias Rector. On bill filed and proceedings had against Rector and others, on the chancery side of the Circuit Court, holden for the county of Pulaski, in the then Territory of Arkansas, a decree was rendered against Rector, on the 23d of November, 1837, being a day of the term of the court which commenced on Monday, the 9th of October, 1837 ; under an execution issued on this decree, the lands were sold by the sheriff on the 5th September, 1842, and Fowler became the purchaser. Such is the title of Fowler.

Keatts also derives his title from Rector, as follows : On the 17th October, 1837, and during the term of the court at which the decree was rendered against Rector, he, by deed of that date, conveyed the lands to Justus P. Stevens ; on the 29th May, 1843, they were sold by the sheriff under execution issued on a judgment recovered against Stevens, and Goodrich &

Boardman became the purchasers. Goodrich afterwards died, leaving Boardman his executor, and on the 13th January, 1857, Keatts acquired the interest of both, by deeds from Boardman.

From what has been said, it will be seen that though the conveyance to Stevens was made before the rendition of the decree against Rector, it was not made until after the first day of the term at which the decree was rendered; and it is conceded by the counsel for Keatts, that if the decree was a lien on the lands, and as such related to, and was in force from the first day of the term, the title of Fowler, who claims under it, is paramount to that of Keatts, who claims through the conveyance from Rector to Stevens.

Under the territorial statute, in force at the time the decree was entered, a final decree in chancery was "a lien on lands as judgments at law in the superior court;" and the territorial act of the 3d July, 1807, then also in force, after enacting in general terms that judgments at law in any court of record, in the territory, should be a lien on lands, contained a *proviso*, in the following words:  " That no judgment now on record in any court within this territory shall continue a lien on the lands and tenements of any persons against whom the same has been entered, during a longer term than five years from and after the passing of this act, unless the person who has obtained such judgment, or his legal representatives, or other person interested, shall, within the said term of five years, sue out of the court where the same has been entered a writ of *scire facias* to revive the same.  And no judgment hereafter entered, in any court of record within this territory, shall continue a lien on the lands and tenements of any person against whom the same has been entered, during a longer term than five years from the first return day of the term of which said judgment may be entered unless the same shall have been revived by *scire facias* within the said term of five years as aforesaid." See *Steele & McC's. Digest, page* 116, *sections* 8, 9, *page* 339, *section* 70.

The language of this enactment is not as explicit as it might

have been; though we think the Legislature intended to provide a judgment lien, in all cases, for the full period of five years; indeed, the language, " no judgment shall continue a lien on the lands, &c., during a longer term than five years from the first return day of the term of which such judgment may be entered," would seem necessarily to imply that the judgment should be a lien for the length of time specified, commencing on the first day of the term. It follows, therefore, that Fowler had the superior title, and that Keatt's cross-bill was properly dismissed.

Keatts, however, in order to defeat Fowler on the original bill, pleaded the limitation act, which provides that all actions against the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales, shall be brought within five years after the date of such sale, and not thereafter. *Eng. Digest, chap.* 99, *sec.* 6. The lands being wild and uncultivated, were never in the actual possession of either of the parties litigant. From the date of the judicial sale to Goodrich & Boardman, under whom Keatts claims, to the time of filing the bill, a period of more than five years elapsed; which, though Keatts was never in possession, is, according to the decision of this court in *Mitchell & Wife vs. Etter et al.*, at October term, 1860, a bar to the relief sought by the original bill.

So much of the decree as dismisses the cross-bill must be affirmed, and so much of it as quiets the title of Fowler must be reversed, and the cause remanded with instructions to dismiss the original bill—each party paying one-half of the costs in this court, and in the court below.

Mr. Justice FAIRCHILD did not sit in this case.