## LIGHT *v.* SELF.

### Opinion delivered March 24, 1919.

1. COURTS—TERMS—ADJOURNMENT.—Where the county court entered an order that "court adjourn until called by the judge," it cannot thereafter validate an order entered during adjournment by amending the order of adjournment so as to make it read: "The court will suspend until tomorrow and remain open until the business of the term is completed," since the court was not in session at such time.

2. HIGHWAYS—ROAD DISTRICT—PROCEEDINGS.—An order of the county court, under Acts 1915, p. 1400, creating a road improvement district, is void.

3. CERTIORARI—DELAY.—Where an order creating a road improvement district was entered on February 7, 1918, the circuit court did not abuse its discretion in quashing the proceedings establishing the district upon petition for certiorari filed September 30, 1918, by owners who were contesting the assessments where the amount of their assessments had not been finally settled; the owners not being chargeable with unnecessary delay.

Appeal from Greene Circuit Court, First Division; *R. H. Dudley,* Judge; affirmed.

*D. J. Beauchamp, W. E. Hemingway, G. B. Rose, D. H. Cantrell* and *J. F. Loughborough,* for appellants.

1.   The *nunc pro tunc* order was valid at least to the extent of setting aside the entry made by the clerk as of January 9. All courts have the inherent power to correct their records so as to make them speak the truth and where the judge knows that the record contains a false or erroneous recital it is within his power and his duty to correct the record and make it speak the truth. It was a matter within his own knowledge. The petition to set aside the order was in apt time and properly overruled. 134 U. S. 136, 141; 84 Pac. 530; 85 *Id.* 594; 95 N. C. 471; 45 S. E. 396; 7 Cush. 282-5; 37 Me. 230; 53 Md. 179; 30 *Id.* 78; 40 Ark. 224; 75 *Id.* 12. The court was justified in substituting for the order, properly set aside, another order. 75 Ark. 12. *Without an adjourning order the term continued from day to day* as long as the business required. Kirby's Digest, § 1356. No order is necessary to keep the court in session but one is necessary to end the term. 78 N. W. 602; 21 N. E. 1039; 37 Pac. 1066; 7 Kan. 386; 110 Pac. 493; 47 Tex. 90; 1 Wis. 156; 8 Atl. 822; 53 Barb. 442; 89 Pac. 267; 113 *Id.* 401; 97 Mass. 214; 15 C. J. 231 F. 234 B.; 1 Freeman on Judg., § 90; 21 N. E. 1039. If the original entry stands, the term was kept open and the court was in session. Under the law, *supra,* the court stood adjourned from day to day and our statute fixes the hours within which it could properly convene. During the whole period there was a court in session; the term was open and the action taken was not *coram non judice.* 21 N. E. 1039; 78 N. W. 602; 97 Mass. 214; 113 Pac. 401; 110 *Id.* 493-6; 65 Fed. 433.

2.   Upon a correct state of the record it appears that the county court was in session, but no evidence was taken with respect to the assessments and they were held to be void as the result of holding the organization of the district void, and the judgment should be set aside and

cause remanded for further proceedings; the judgment quashing the formation of the district should be set aside, as also the judgment setting aside the correction of the record, and that the formation of the district should be approved and the correction of the record permitted to stand. Cases *supra.*

*Huddleston, Fuhr & Futrell,* for appellees.

1. The circuit judge found that the county court did not make the *nunc pro tunc* order and properly denied the petition to make it. While a court has inherent power to correct its record by *nunc pro tunc* order to make it *speak the truth,* it cannot so amend it as to make it speak what it did not speak, but ought to have spoken. 93 Ark. 234; 118 *Id.* 593; 45 *Id.* 240; 1 Black on Judg. (2 ed.), § 156; 23 Cyc. 873. Appellants are bound by the judgment of the lower court on the facts. 75 Ark. 12. The court having found against them on the application for *nunc pro tunc* order the original order of January 9 remains in full force. 82 Ark. 188. An adjournment, unless it is to some day certain, constitutes an adjournment for the term. 203 S. W. 707. The old common law rule that a court's term was considered as of one day and continuously in session until final adjournment has been changed by our statutes. 118 Ark. 416; 203 S. W. 704, etc.; Kirby's Digest, § 1531. The cases cited by appellants are from States following the old common law rule changed in Arkansas.

2. The assessments made here are void. Act No. 338, Acts 1915, § 9. The record shows that certain material, substantive acts were done April 17, when the court had no jurisdiction. The assessors also failed to assess all the land in the district and have duplicated assessments on some of the lands and no proper notice was published. Only county roads were to be improved, not city and town streets. Acts 1915, No. 338, § 7. There was also a material change in the route of the road after the district was created.

McCULLOCH, C. J. Appellants are commissioners of a road improvement district, the legal existence of which depends upon the validity of an order entered on the records of the county court of Greene County February 7, 1918, purporting to create the district pursuant to the terms of Act No. 338 of the General Assembly of 1915. Appellees are owners of real property within the territorial boundaries of the district and they assail the validity of the proceedings on the ground that the county court was not in session on the day which the record shows the order was made.

According to the record before us, the county court convened on the first Monday in January, 1918, the day prescribed by law, and remained in session until the 9th day of January, when an order was entered in the following words: "It is ordered by the court that the court adjourn until called by the judge." This record was signed by the presiding judge of the court. There were no further proceedings in the court, and, according to the record, no other session of the court was held until February 7, 1918, when the order was entered creating this road improvement district.

Appellees thereafter appeared in the county court and contested the assessments of benefits, and appealed from the order of the county court approving the assessments, and also presented to the circuit court a petition for *certiorari* for the purpose of bringing up the records of the county court and quashing the same on the ground that those records disclosed the fact that the county court was not legally in session on the day the proceedings were had creating the improvement district. During the pendency of these proceedings in the circuit court, the county court at a session held·on October 26, 1918, entered an order correcting the former entry made on January 9, 1918, concerning the adjournment of the court so as to make that order read as follows: "The court will suspend until tomorrow and remain open until the business of the term is completed."

Appellants filed an answer to the petition and the matter was heard by the court on the pleadings and oral testimony of the county judge and the clerk of the county court, which in substance showed that when business of the county court was suspended on January 9, 1918, there was no specific order made by the judge, but the judge testified that his intention was that the court should remain in session from day to day until the business of the court was completed. The circuit court, on the final hearing, quashed the proceedings on the ground that the county court was not legally in session on the day the order was made creating the district. In other words, the court held that it was a vacation order, which is not authorized by statute.

The contention of learned counsel is that the rule still prevails here, according to what is said to be the common-law rule on the subject, that where a court meets at the proper time and place specified by law the term continues until the beginning of another regular term, which breaks the continuity, or until there has been an affirmative order of the court adjourning without day or to a specified day. Such, indeed, was the common-law rule, which was a part of the fiction that a term of court, however long extended, was but a day, and that all judgments and orders of the court were of that same day. We have expressly repudiated the common-law rule as being inconsistent with our statutes so far as concerns the theory that the term is but one day. *Ex parte Baldwin,* 118 Ark. 416; *State ex rel.* v. *Canal Construction Co.,* 134 Ark. 447, 203 S. W. 704.

In *Ex parte Baldwin, supra,* we said: "The ancient rule was that a term of court was considered as of one day and the court deemed to be continuously in session from beginning of the term until the final adjournment. * * * Our statute manifestly contemplates different days of the term of court, but it does not take account of parts of days, and even if the court announces an adjournment it has the power to reconvene on the same day for the purpose of transacting business."

In *State ex rel.* v. *The Canal Construction Co., supra,*
we said: "Under our statutes certain times and places are
fixed by law to hold court. * * * When the court ad-
journed to a day certain all persons interested had the
right to remain away until the day fixed by the court to
convene again, and the judge could not before that day
arrived convene the court and proceed with the dispatch
of the cases and other matters pending therein. The fact
that by a statute in this State courts must be held at fixed
times and places raises the implication that courts can-
not assume a vagrant character and hold their sessions at
other times or places than those provided by law."

The county court is a court of record and our statute
regulating the procedure in such courts provides for what
are termed adjourned sessions of court, and also for spe-
cial terms of court. The statute authorizing adjourned
sessions reads as follows:

"Special adjourned sessions of any court may be
held in continuation of the regular term, upon its being
so ordered by the court or judge in term time, and entered
by the clerk on the record of the court." Kirby's Digest,
section 1531.

This statute is manifestly in conflict with the common-
law rule concerning the continuity of a term of court, and
necessarily changes the common-law rule, for, if that rule
still prevails making terms of court continue from day to
day without an order of court, then it is surplusage for
the lawmakers to require an adjourned session in contin-
uation of the term to be expressly ordered by the court
and entered on the record.

The statute is not declaratory of the common-law
rule but operates as a restriction of that rule by requir-
ing adjourned sessions of court to be specifically ordered
and the order entered on the record.

The case before us does not involve an instance where
the county court suspended business without a specific
order of adjournment and resumed its function the next
day, but the facts of the case are that the court met on
a distant date—after the intervention of twenty-nine

days without convening the court in the meantime—and
attempted to continue the business of the term. It is im-
material whether we consider the order originally entered
by the clerk or the one subsequently entered *nunc pro
tunc* by the court. One of them recites that the court was
adjourned "until called by the judge," and the other re-
cites that the court suspended business until the next day
to "remain open until the business of the term be com-
pleted." It does not appear that the court met the next
day, or any other day, until February 7, 1918, the day
on which the order creating this district was entered.

To uphold the action of the judge as being that of
the court in session would be to approve and legalize the
practice which we expressly condemn in *State ex rel.* v.
*Canal Construction Co., supra,* and adhere to a rule which
would permit the court to "assume a vagrant character
and hold its sessions at other times or places than those
provided by law," for, if that practice is to be followed,
there would be no notice to litigants when court is to be
held so as to afford them an opportunity to attend. To
allow such a rule is also to ignore the statute which pro-
vides that an adjourned session of the court must be
definitely specified by an order entered on the record in
term time; or, in other words, while the court is legally
in session.

It is unnecessary to inquire what the rule is in other
States, for we think that our statutes on the subject set-
tle the question against the contention of counsel for ap-
pellants.

The court not being in session, it follows that the or-
der creating the district is void, and the only remaining
question is the one earnestly argued by counsel that the
case falls within the rule that *certiorari* is a matter of
discretion and not one of right, and that the relief should
be denied unless the proceeding is invoked without delay
after the entry of the judgment or order sought to be
quashed.

That rule has been applied by this court, as con-
tended for by counsel, in several cases, notably in *Black*

v. *Brinkley*, 54 Ark. 372, and *Johnson* v. *West*, 89 Ark. 604. Whether the rule is applicable to a case of this sort, involving the validity of an improvement district which necessarily results in the levying of special taxes on real property, we need not stop to inquire, for we are of the opinion that the trial judge did not abuse his discretion, under the circumstances, in granting the relief sought. The record shows that the petition for *certiorari* was filed in the circuit court on September 30, and it was heard at the October term, 1918. In the meantime appellees were contesting their assessments, and as a part of their contest brought up for review the county court's record establishing the district. The amount of assessments of benefits had not been finally settled when the present attack on the validity of the organization was begun. We are of the opinion that appellees are not chargeable with unnecessary delay, or, at least, we will not disturb the finding of the circuit court to that effect.

Affirmed.

WOOD, J., (dissenting). The county court of Greene County convened on Monday, January 7, 1918, the day fixed by law, for the commencement of one of the regular terms of that court. Section 1356, Kirby's Digest.

Petitions for the creation of Road Improvement District No. 1 of Greene County, Arkansas, were pending before the court. The court, as shown by an order, entered on its record, consolidated and treated these petitions as one, and fixed January 18, 1918, as the day for the hearing of the petition. On January 9, 1918, when the business of that day was closed, the judge of the court "walked off the bench and made no order at all," adjourning court. "It was the intention that the court should remain open until the work was completed." There was a record

*Note.*—The court in this case did not consider whether section 40 of Act 338 of 1915 was applicable. The section was not called to the court's attention.—(Rep.)

entry as of January 9, 1918, as follows: "It is ordered by the court that court adjourn until called by the judge." The county court afterwards entered a *nunc pro tunc* order so as to make the adjourning order of January 9 read as follows: "This court will suspend until tomorrow and remain open until the business of this term be completed."

It does not appear that there were any formal orders opening and adjourning the court from day to day from January 9 until January 18, the day set for hearing the petition for the creation of Road Improvement District No. 1 of Greene County, but there is in the bill of exceptions an order of the county court entered of record as of January 18, 1918, which recites as follows: "Court met pursuant to adjournment. * * * On this day is presented to the court the petition of Jason L. Light *et al.;* also, the petition of J. W. Seay *et al.;* also, the petition of the Security Bank & Trust Company *et al.;* and the petition of J. A. Newberry *et al.,* all praying for the establishment of a road improvement district," *et cetera.* "Honorable Jeff Bratton asks that the hearing of the petitions be continued until the 1st day of February, 1918, which was by the court granted, and the cause is continued until the 1st day of February, 1918."

There is also an order showing that the court met on the first day of February, 1918, "pursuant to adjournment," and the hearing of the cause was continued on that day until the 7th day of February, 1918, on which day the county court entered an order establishing Road Improvement District No. 1 of Greene County.

The undisputed testimony of the clerk and his deputy, one of whom entered the purported adjourning order of January 9, *supra,* shows that they did not know whether the court actually made the order or not. The testimony of the judge, himself, shows that no such order was made; and, indeed, the undisputed testimony of the judge shows that no adjourning order of any kind was made by the court on the 9th day of January, 1918.

The rule, as established by our own and the authorities generally, is that courts of record have power by an order *nunc pro tunc* to make their records reflect the facts as they actually took place; in other words, to make their records speak the truth. But they cannot, by *nunc pro tunc* orders, cause their records to show what was not actually done. "A *nunc pro tunc* order does not create, but only speaks, what has been done." *Cox* v. *Gress*, 51 Ark. 231; *Gregory* v. *Bartlett*, 55 Ark. 30; *Lourance* v. *Lankford*, 106 Ark. 470; *Citizens Bank of Mammoth Springs* v. *Commercial Bank*, 118 Ark. 271.

The county court, under the undisputed evidence, properly set aside the order entered by the clerk, to-wit: "That court adjourned until called by the judge." But the court had no power to substitute for this order one which the court intended to, but did not, in fact, make.

Therefore, the facts of this case as shown by oral testimony and the record entries of the county court as set forth in the bill of exceptions are: That the county court of Greene County, by an order entered on its record, set for hearing January 18, 1918, certain petitions that were pending before the court praying for the establishment of Road Improvement District No. 1 of Greene County, Arkansas; that after making the above order on the 9th day of January, 1918, the same being a day of the regular January term, the judge left the bench without making a formal order adjourning court; that on Friday, January 18, 1918, the court "met pursuant to adjournment," and the cause presented by the petitions for the creation of Road Improvement District No. 1 of Greene County, was called and on motion of the attorney for the remonstrants, was continued until February 1, 1918; that on the 1st day of February, 1918, the hearing of the cause was continued until the 7th day of February, 1918; that on February 7, 1918, the county court of Greene County convened pursuant to adjournment and entered a judgment establishing the district above named.

On the 30th day of September, 1918, the appellees herein filed in the circuit court of Greene County, a peti-

tion for writ of *certiorari,* alleging in substance that the county court was not legally in session, and therefore had no jurisdiction to make the order establishing Road Improvement District No. 1 of Greene County.

The appellants responded denying the allegations of the petition. At the hearing the facts as above set forth were developed and the court entered the judgment quashing and setting aside the judgment of the county court establishing Road Improvement District No. 1 of Greene County.

*First.* I have been thus careful to state the facts in detail for the reason that in the opinion of the majority of the court, no notice is taken of the fact that prior to January 9, 1918, the county court had set January 18, 1918, as the day for the hearing of the cause pending on the petitions for the creation of Road Improvement District No. 1 of Greene County. An accurate statement of the facts is a prerequisite to a proper application of the law. Consideration of the above important fact, in my opinion, is essential to a correct decision of this cause, for it shows conclusively that the business of the January term of the Greene County Court was not completed at the close of the 9th of January, when the judge left the bench without formally adjourning the court. The fact that the hearing of the cause for the creation of Road Improvement District No. 1 was set for January 18, shows that the business before the court required that the court meet on that day. This fact also demonstrates unmistakably, and the county judge himself testified, that it was the intention of the court when the judge left the bench on the 9th day of January, 1918, not by that act to finally end the term, but it was the intention that the court should again be in session during that term at least on the 18th day of January succeeding.

If the judge of the county court through inadvertence, or because he may have considered it unnecessary, failed to enter a formal order adjourning the court on that day to the next day, and from day to day until January 18, 1918, the day previously designated for the hear-

ing of the cause pending before the court, or did not adjourn from the 9th until the 18th, did such failure cause the term of the court to lapse? That is the precise question first presented by the undisputed facts of this record. The county judge in this connection testified:

"Q. On the 9th day of January, 1918, you had in your court for hearing this Road Improvement District No. 1 to take place on the 18th day of January, didn't you?

"A. I don't know whether it was on the 9th or not, but it was the 18th that it was to come up again, I know.

"Q. And I believe you stated that you were pretty positive that when the work on the day of the 9th, if that was the proper day, was completed you simply got up and went out without making any order for adjournment?

"A. That is the best of my memory."

The record entry, as before stated, shows that the court had entered an order setting the 18th day of January, 1918, for hearing the petitions for the creation of Road Improvement District No. 1 of Greene County. This action of the court in setting the cause, and nonaction in merely failing to announce an adjournment or recess in the regular session from the 9th to the 18th day of January, as disclosed by the testimony, taken together, was but tantamount to an adjournment or recess of such regular session of the court from the 9th to the 18th of January, and on the latter date there was an order entered of record continuing the cause until the 1st of February, 1918, which in effect was an adjournment of the court for the regular term to a special adjourned term to be held on the 1st of February, 1918.

In *Ex parte Baldwin* the circuit court of Sevier County was in regular session of the January term, 1915, and on the 5th day of February, 1915, there was a record entry as follows: "Ordered that court adjourn until ................................," and immediately following was the entry: "Ordered that court adjourn until Thursday morning, March 4, 1915." Intervening these dates there was a regular term of the circuit court in another county.

The question was whether or not the January term of court lapsed. We held that the record showed an adjournment on the 5th day of February to the 4th day of March, 1915, and that inasmuch as a definite day was fixed in the adjourning order the intervening regular term in another county did not cause the regular January term of the Sevier Circuit Court to lapse. Although the first adjourning order left the date blank, the second adjourning order made on the same day supplied the date, and we treated the record as showing an order of adjournment made on the 5th day of February until March 4, 1915. In that case we said: "Our statute manifestly contemplates different days of the term of court, but it does not take account of parts of days and even if the court announces an adjournment, it has power to reconvene on the same day for the purpose of transacting business." *Ex parte Baldwin,* 118 Ark. 416.

In *State ex rel. Hall* v. *Canal Construction Co.,* 134 Ark. 447, the county court of Poinsett County on the 5th day of October, 1914, entered an order adjourning the court until the 28th day of October, 1914. The regular term of the probate court of Poinsett County intervened these dates. Instead of meeting on the 28th day of October, the presiding judge attempted to convene court on the 26th day of October, and on the latter date made the order which was called in question. We held under these facts that the county court may adjourn to a fixed day and that when the court has done so it can not prior to that day reconvene the court. In this case we said: "When a court adjourns to a distant day and does not reconvene the same day the functions of the court cease after the expiration of the day on which the order of adjournment is made until the day fixed for reconvening."

The undisputed facts of the present record, as I have set them out in detail above, unquestionably in effect show an adjournment, or rather, recess, in the regular session of the county court of Greene County from the 9th to the 18th of January, 1918, on which latter date the court reconvened and by appropriate order continued the

cause, which in effect adjourned the court for the regular term to February 1, a special day, and on that day again to February 7 and on the latter day, February 7, 1918, convened *"pursuant to adjournment,"* and entered judgment establishing the district. Applying the doctrine of the above cases to the facts of this record, it appears to me that the county court of Greene County was in due and regular session, pursuant to previous orders of adjournment, on the 7th day of February, 1918, and had jurisdiction to render the judgment establishing Road Improvement District No. 1 of Greene County. The circuit erred in holding otherwise.

*Second.* But I further maintain that even if the 18th of January had not been set for the hearing of the petitions for the creation of Road Improvement District No. 1 of Greene County, nevertheless, the county court of Greene County, having duly convened in regular session on Monday, the 7th day of January, 1918, continued as long as the business pending before the court required; that in the absence of an affirmative order entered of record adjourning the court to a special adjourned session, or adjourning court *sine die,* the term of court remained open for the transaction of business until the next term of the same court or probate court, presided over by the same judge; and that no formal affirmative order each day opening and adjourning court for that day and then to the next, or to a distant day of the regular term, was necessary in order to preserve its sessions and keep the term from lapsing; that consequently when court convened on the 18*th day of January,* 1918, *it was in due and regular session.*

Section 1356 of Kirby's Digest provides: "The regular terms of the county courts in the several counties of this State shall commence on the first Monday in January, April, July and October of each year *and continue as long as the business shall require."* By force of this statute, the Greene County Court, having met on Monday, January 7, 1918, the day provided by law, continued *as long as the business required,* and until the next regu-

lar term of the county court or of the probate court, unless it was sooner terminated by an affirmative order adjourning the court *sine die,* or to a distant day for a special adjourned session, or unless a special term of the court had been called. The presiding judge of the county court, whose function and duty it is to dispose of the business of that court, must necessarily determine whether the business requires that the court sessions continue for the full term. In performing this purely administrative function of dispatching the business, it is also necessarily within the province of the court to determine whether it is expedient to hold consecutive sessions from day to day, or at intervals of one or more days, or weeks.

The statute providing that the regular terms of the county courts shall "continue as long as the business shall require," designates specifically Monday as the day when the regular terms shall commence, but neither this nor any other statute prescribes specifically (other than the day of commencement), any particular day, or number of days that the court shall be in session during the term, or when the term shall end. The unrestricted language, "continue as long as the business shall require," shows clearly that it was the purpose of the Legislature to have the judge presiding over the county court as the administrator of the affairs of the county, determine whether the exigencies of the business of the county required the full term with the court in continuous session from day to day, or whether it could be disposed of in a shorter time and with sessions at intervals. The broad language used certainly implies that when a regular term of the county court is begun, it shall continue until ended by statute fixing the beginning of another term of the same court, or other court presided over by the same judge, or by the affirmative act of the court adjourning the court to a special adjourned term, or adjourning *sine die,* or till court in course, and thus declaring the term ended.

The statute is but declaratory of the common law and in conformity with the rule that obtains, as shown by

decisions of the highest courts, in every State of the American Union, so far as I know, having similar statutes, as well as in those States having no statute on the subject, or none expressly providing to the contrary. The learned authors of *Corpus Juris* say: "In general, a term continues until it is adjourned, or until it expires according to the time established by law." Again, "Where the time of beginning, but not of ending a term is fixed, the term when it has been duly begun, will continue, and may for all general purposes, be considered as in session, until it has been determined by some affirmative judicial act, such as an adjournment *sine die,* or until the next term." 15 Corpus Juris "Courts," section 23, 1 F.

Mr. Freeman says: "Every term continues until the call of the next succeeding term, unless previously adjourned *sine die.*" 1 Freeman Judg., section 90. Counsel for appellants cite and quote the above and they also refer to the following authorities as supporting the doctrine announced. *Deleon* v. *Barrett,* 22 S. C. 412-419; *Garrard County Court* v. *McKey,* 11 Bush. 232; *Brown* v. *Stewart,* 26 N. E. (Ind.) 168; *People* v. *Central Bank,* 53 Barber 412; *People* v. *Sullivan,* 21 N. E. (N. Y.) 1039; *Eastman* v. *City of Concord,* 8 Atl. (N. H.) 822; *Commonwealth* v. *Barmon,* 97 Mass. (Allen's Rep.) 214-220; *Barrett* v. *State,* 1 Wis. 156-161; *State* v. *McBane,* 78 N. W. (Wis.) 602; *Jones* v. *McClaughrey,* 152 N. W. (Ia.) 210-212; *Green* v. *Morse,* 77 N. W. (Neb.) 925; *Union Pac. Ry. Co.* v. *Hand,* 7 Kan. 380-388; *State* v. *Hargis,* 113 Pac. (Kan.) 401; *Labadie* v. *Dean,* 47 Texas 90-100; *In re Dossett,* 37 Pac. (Okla.) 1066-1071; *Bidwill* v. *Love,* 98 Pac. (Okla.) 425; *St. Louis, etc.* v. *James,* 128 Pac. (Okla.) 279; *Tucker* v. *State,* 139 Pac. (Okla.) 998; *Territory* v. *Armigo,* 89 Pac. (New Mexico) 267; *Ex parte Harrell,* 110 Pac. (Ore.) 493; *State* v. *Marlock,* 115 Pac. (Ore.) 425; *Dees* v. *State,* 28 So. (Miss.) 849; *The Canary No. 2,* 22 Fed. 536; *Townsend* v. *Chew,* 31 Md. 247; *Sterlong* v. *Wayne,* 31 Pac. (Wyo.) 1032; *Scoffield* v. *Horse Springs Cattle Co.,* 66 Fed. 435. All of the above cases

are in point. I shall not undertake to review them all *seriatim;* but anyone who may be sufficiently interested to examine them will find that they sustain the rule for which appellants contend. Some of them note, by way of narrative, the historical fact of the existence of the rule of the common law which has come down to us through the ages out of a remote past. The cases, as I now recall do not support the rule because it is so "full of years," but, regardless of its origin, they approve it because it is "ripe in wisdom," and is indispensable to the administration of justice.

The above authorities cannot be summarily disposed of by a statement in the majority opinion to the effect that it is unnecessary to inquire what the rule is in other States; that our statutes on the subject and decisions in *Ex parte Baldwin, supra,* and *State ex rel.* v. *Canal Construction Company, supra,* settle the question contrary to the rule announced in the many cases cited in brief of counsel for appellants.

Let us see if they do. We have a statute prescribing that "every regular or special term of the county court, shall be held with open doors, and between the hours of nine o'clock a. m. and six o'clock p. m." Section 1369 Kirby's Digest; and another statute providing that "the county judge of any county may hold a special term of the county court when the public good of the county demands same." Section 1367, Kirby's Digest; and another which provides, "special adjourned sessions of any court may be held in continuation of the regular term, upon its being so ordered by the court in term time, and entered by the clerk on the record of the court." Section 1531, Kirby's Digest.

These statutes do not in any manner impair, or abrogate the rule above announced as to the continuity of a term of court. The statute authorizing the holding of a special term, section 1367, *supra,* provides a separate, independent, and distinct term from the regular term, and in no manner conflicts with the period set apart for the regular terms. Its purpose is to meet emergencies

in the business of the county arising in the interval between the day of adjournment of the regular session until court in course, or until the day appointed for the special adjourned term, as the case may be. See 7 Words and Phrases, "Special Term," and cases cited; also American Digest, 1907 to 1916 (2 Dec. ed.), "Courts," sec. 64 (1) *et seq.* to sec. 65, and cases; 7 R. C. L., "Special Terms and Sessions," 990, sec. 17.

The statute (section 1531, *supra*) providing for special adjourned sessions, is but declaratory of the common law upon that subject. "All courts unless restrained by some statutory provision, have a right of adjourning their sittings to a distant day, and the proceedings had at the adjourned session will be considered as the proceedings of the term so adjourned." *Dunn* v. *State*, 2 Ark. 229 (citing *Mechanics Bank* v. *Withers*, 6 Wheat. 106, 5 U. S. L. Ed., 217). See, also, 7 R. C. L. 990, sec. 18 "Courts"; *In re Dossett, supra; Harris* v. *Gest*, 4 Ohio St. 470; *In re McDonald*, 33 Pac. (Wyo.) 18; *Scoffield* v. *Horse Springs Cattle Co., supra; Tucker* v. *State, supra.*

Section 34, Code Civil Proc. of New York, provides that a "general, special or trial term of a court of record may be adjourned from day to day, or to a specified future day, by an entry in the minutes." The Court of Appeals of New York in an opinion by Mr. Justice Peckham held that "the power of courts in regard to adjournments is not limited to that derived from the above section," that the common law powers of courts were not restricted or abrogated by the statute quoted. *People* v. *Sullivan, supra.*

Under the common law rule the orders of a court of record were of course required to be entered of record. Therefore, the statute requiring that the order for adjourned sessions of court be specifically entered of record does not restrict the common law rule in that respect, but is only declaratory of it.

But it is said in the majority opinion, "We have expressly repudiated the common law rule as being inconsistent with our statutes, so far as concerns the theory

that the term is but one day," citing *Ex parte Baldwin*
and *State ex rel.* v. *Canal Construction Company, supra.*
I took part in the decisions of those cases and concurred
in the opinions rendered therein. In both, as already
stated, there was a special adjourned term by order en-
tered of record. In the Baldwin case, the circuit court of
Sevier County being in regular session at its January
term, adjourned from February 6, 1915, until March 4,
1915. We held that there was a special adjourned term
of the regular January term from February 6 until the
definite date, March 4, and that the January term did
not lapse even though a regular term in another county
intervened those dates. In the Canal Construction Com-
pany case, there was an adjournment of the regular Octo-
ber term of the county court of Poinsett County from the
5th day of October, 1914, until the 28th day of October,
1914. The regular term of the probate court of Poinsett
County intervened these dates. Section 1337, Kirby's Di-
gest. We held that the county court having adjourned the
regular October term on the 5th until the 28th of October,
could not reconvene on the 26th, two days before the day
appointed for the special adjourned term. In the latter
case, the regular October term of the Poinsett County
Court, having begun on Monday, October 5, 1914, would
have terminated by law before the 26th day of October,
1914, because of the intervening regular term of the pro-
bate court, October 19, 1914. Sections 1337 and 1356,
Kirby's Digest. Since the 26th of October was not a day
in the period of time set apart for the regular October
term of the county court, this court was manifestly cor-
rect in holding that the county court had no jurisdiction
to convene on that day, but only had power to convene on
the 28th, the day appointed by the order for the special
adjourned session. Had the 26th of October been a day
of the regular term, a different question entirely would
have arisen.

It is further stated in the opinion of the majority,
"that this cause was heard by the court on the pleadings
and oral testimony of the county judge and the clerk of

the county court, which in substance showed that when business of the county court was suspended on January 9, 1918, there was no specific order made by the judge, but the judge testified that his intention was that the court should remain in session from day to day until the business of the court was completed." I have already shown by the record itself and the undisputed evidence of the judge, that an order was entered of record before January 9, 1918, setting January 18, 1918, as the day for hearing the cause involved in the petitions for the creation of Road Improvement District No. 1 of Greene County, and that the court on the 18th "met pursuant to adjournment." But if it be conceded that the facts are as stated in the majority opinion, then the present case is wholly unlike the cases of *Ex parte Baldwin* and *State* v. *Canal Construction Company, supra,* and therefore, those cases, under the facts stated in the majority opinion, have no application whatever to this case. The conclusion reached, respectively, in *Ex parte Baldwin* and *State* v. *Canal Construction Company* is certainly sound when applied to the facts there stated. But, I respectfully protest against the construction now given those cases by the majority of this court, for such construction places them in the unenviable category of being out of harmony with the great weight of authority in this country. Not only so, but, what to me is far worse, they are now cited in support of a rule of practice which is extremely technical, and which has no foundation in reason; a rule, which, when carried to its logical ultimate conclusion, as it sooner or later must be, will lead to absurdities and greatly trammel the practical administration of justice.

When our courts of record are duly convened on the first day of the regular term, does the integrity of the term, and of the proceedings had on a subsequent day or days of the regular term, depend upon whether there is an affirmative order of the court entered on the record showing that the court took a recess or adjourned from day to day, or till the distant day of the regular term when the proceedings were had? Does the jurisdiction

of the court to proceed depend upon an affirmative order on the record showing that the court met on the precise day to which the recess .or adjournment was had, and that the business was transacted on that very day and no other? If these orders are essential to give the court jurisdiction of the subject-matter and to preserve the continuity of the regular term of court, then indeed is the jurisdiction of our courts of record to proceed to transact the business before them during the regular term dependent upon circumstances extremely adventitious. It is suspended, so to speak, in thin air and upon a very brittle thread. Memory is fickle. The judges may forget to make orders for the necessary recesses, intermissions or adjournments of court sessions. Fortuitous events may, and will happen, after the regular term has begun, to prevent judges from atttending on the days specially designated. Fortunately, our statutes which, after all, are but declaratory of the inherent common law powers of these courts of record, provide for the continuation of their regular sessions when once begun, until the business before them is disposed of. See section 1928 as to Courts of Chancery; sections 1320 and 1326 as to Circuit Courts; section 1337 as to courts of probate, and the section under review (1356) as to county courts, Kirby's Digest. When these courts are once convened in regular session on the day fixed by law, that session may be suspended with or without formal orders by recesses or adjournments at the close of a day's session till the next or a more distant day in the regular term. See *Deleon* v. *Barrett, supra; Garrard County Court* v. *Mc-Key.* 11 Bush. 236. But a term of these courts, once regularly begun, can not end, under the above statutes, until it expires by operation of law, by the beginning of another term or by the affirmative order of the court adjourning the session *sine die,* or until court in course. I am referring now only to sessions of the regular term and not to special adjourned sessions. A session of court during the period covered by law for the regular term is not the special adjourned session contemplated

by section 1537, Kirby's Digest. *Kingsley* v. *Bagby,* 41 Pac. 991. See also *State* v. *Butler,* 118 Mo. App. 587, 95 S. W. 310; *Montgomery* v. *Dormer,* 181 Mo. 579; 1 Words & Phrases, 192, "Adjourned Term," Supplement, vol. 1, p. 114, "Adjourned Term;" 15 C. J. "Courts," sec. 233.

As to the policy and effect of the rule the court in the majority opinion says: "To adhere to this rule would permit the court to assume a vagrant character and hold its sessions at other times and places than those provided by law, for, if that practice is to be followed, there would be no notice to litigants when court is to be held, so as to afford them an opportunity to attend." Learned counsel for appellees cite *Irwin* v. *Irwin,* 37 Pac. 548 (Okla.), where language to the same purport is used. But in the latter case the adjourning order recited: "*There being no further business* before the court, it is considered, ordered and adjudged that this court be and the same is hereby adjourned." This clearly showed that the *business for the term* had been *concluded,* and the order was an adjournment for the term; it was tantamount to an adjournment *sine die,* or till court in course. After such an order, of course, the court could not reconvene on a subsequent day of the same term, and the Supreme Court correctly decided that any proceedings on such day were void because the term had lapsed. The Supreme Court of Oklahoma did not intend, in *Irwin* v. *Irwin, supra,* to approve the rule now announced by the majority of this court, as is shown conclusively by the fact that on the same day when the opinion in that case was handed down, it also rendered the opinion *In re Dossett, supra,* which is decidedly one of the strongest and ablest opinions of the many cited in support of the rule for which appellants contend. Another case relied on by appellees is *Baker* v. *Newton,* 112 Pac. 1034. In that case the statute fixed a day for the beginning of the regular term of the probate courts, but there was no provision like ours that they "shall continue as long as the business shall require." The county court convened on the

first day of the regular term and on the same day *"adjourned subject to call."* The Supreme Court of Oklahoma said: "Upon adjourning the regular term, without fixing in the order of adjournment any time at which the court shall convene, the term lapsed." The court cited *Irwin* v. *Irwin, supra,* but made no reference to *In re Dossett,* showing that the court did not intend to impair the doctrine of that case. Therefore, the court in *Baker* v. *Newton, supra,* simply held that where there is an *adjournment of the term without day* the court can not reconvene until the time fixed by law. In *Meyers* v. *East Bench I. R. R. Co.,* 89 Pac. (Utah), 1005, the "court adjourned subject to call on order of the court." The court held that an adjournment without fixing any special time, ends the term, and that the court could not reconvene until the next regular term. The above are the only cases from foreign jurisdictions relied on by counsel for appellees to sustain their contention. The facts of the cases clearly differentiate them from the present case. These cases have no application here, for the reason that in each of them there was an affirmative order entered upon the record showing an adjournment of the court, in one case, "there being no further business;" in another (as the court held) an order "adjourning the regular term," and in the third, an order adjourning "subject to call, or on order of the court;" and, in the third case there was an attempt under such order to hold a session of court beyond an intervening regular term. The Supreme Court held that the adjourning order entered of record in each of the above cases was tantamount to an order of adjournment *sine die,* or for the term, *i. e.,* till court in course. How different are the facts of the present record. Here, as the undisputed evidence shows, the county judge, at the close of the session of the court on the 9th day of January, left the bench without making any order of adjournment at all, and fully intended not to adjourn for the term, but on the contrary, to keep the court open for the transaction of the business which had not yet been disposed of.

The briefs of counsel for both parties show a most exhaustive research for authorities to sustain their respective contentions, and no case has been cited, and none exists, so far as I know, that sustains the contention of appellees. Therefore, I feel safe in saying that in the opinion handed down in the case at bar, this court is almost, if not entirely, alone in repudiating the rule announced in Corpus Juris, by Mr. Freeman, and the many cases, *supra.* I confess that while such isolation would not be pleasing to me, nevertheless I would concur in the opinion of the court, if, as stated therein, an adherence to the rule contended for by appellants, would permit our courts to assume a vagrant character and enable them to dispose of causes without notice to litigants. Such, however, is not the case. The law fixes the terms of courts and designates the place where their sessions shall be held (1009 and 1124, Kirby's Digest), and the day when their sessions shall begin. Of these all parties must take notice. No honest judge would arbitrarily undertake to hold a session of court and to render judgments and make orders in the absence of litigants. If a court should render any judgments or make any orders under such circumstances, it would be a fraud practiced by the court itself upon the parties over whom the court had acquired jurisdiction, and an unavoidable casualty or misfortune preventing them from appearing. While these matters could not in any wise deprive the court of jurisdiction, yet against any such judgment or orders, the law affords ample protection. See *Ex Parte Baldwin,* p. 418; sec. 4431, subdiv. 4 and 7, and sec. 6220, Kirby's Digest. No case of remediless injustice ever has arisen, or ever will arise under the rule for which appellants contend.

On the other hand, the rule for which appellees contend, and which is now for the first time approved by the majority of this court, will occasion great inconvenience, delay and cost, and result in numerous miscarriages of justice. Because of the infirmities of memory, judges will fail, just as in this case, to order at the close of the

day's session an adjournment or recess of the court session until the following day, or to a distant day. On account of some casualty the judges will fail to attend court on the distant day of the regular term, to which same has been adjourned, but may be able a day or so thereafter to resume court functions and continue the business already begun. Such occurrences are attested by the experience and observation of nearly every trial judge. Yet the highly technical rule now announced by this court would cause, under the above circumstances, the term of court to lapse, and all the annoyance and expense incident to proceedings begun, but not concluded, would have to be repeated.

I greatly fear we shall often be confronted with records which will compel us, under the rule now sanctioned by the court, because of some such sheer technicality as above set forth, to reverse causes of the greatest magnitude. Then indeed will this court find itself in a dilemma, which, with slight paraphrase, is aptly described in the language of the immortal Pike:

"The ghosts of the sound rule haunt us,
The ills of the bad rule taunt us,
And disappointments daunt us,
Every year."

Some of the cases cited in appellant's brief portray most forcefully the absurdities and the disastrous consequences to court proceedings that would ofttimes inevitably follow under the rule now adopted by the court. I refer especially to the cases of *U. P. Ry. Co.* v. *Hand, People* v. *Sullivan* and *In re Dossett, supra.*

Again it is stated in the majority opinion that, "the case before us does not involve an instance where the county court suspended business without a specific order of adjournment and resumed its function the next day, but the facts of the case are that the court met on a distant day after the intervention of twenty-nine days without convening the court in the meantime," etc. The above statement shows that the court has made an egregious mistake as to the facts, and emphasizes the truth

of what I said in the beginning, towit: "An accurate statement of the facts is a prerequisite to a proper application of the law. The record must speak for itself. I have set it forth together with the undisputed testimony of the judge who made it.

The facts are that the court was in regular session on January 9 and again on the 18th of January. So that instead of being an "intervention of twenty-nine days," there was an intervention of only nine days. This fact is of controlling significance. For I concede that if no order was entered of record by the court, or judge, calling a special adjourned session for the 7th of February, and that without such order the court undertook to convene on the latter date, then the January term would have lapsed. If such were the facts, the proceedings had on the 7th of February, 1918, would be *coram non judice* and void, for the reason that the regular term of the probate court began on the third Monday in January, and the regular January term of the county court expired by operation of law on the convening of the probate court. The facts, however, being as I have stated them, the proceedings of the county court on February 7, 1918, were, as I have shown, in all things regular, and its judgment creating the district was valid.

May I ask, in this connection, are we to infer from the statement in the opinion last above quoted, that if the court had resumed its functions "the next day after the 9th of January, or on some succeeding day, but not so far distant as the 7th of February, thereby reducing the interval to less than twenty-nine days, that the January term would not have lapsed? If so, then this portion of the opinion is a mere begging of the question and inconsistent with other portions. The issue between appellants and appellees is sharply drawn. The court in the majority opinion correctly states appellant's contention, towit: "That where a court meets at the proper time and place specified by law, the term continues until the beginning of another regular term, which breaks the continuity, or until there has been an affirmative order of the

court adjourning without day or to a specified day."
After stating that such was the common law rule, the
court then expressly repudiates it, saying that it was
based upon the fiction at common law that a term of court,
however long, was but one day; that if "that rule still
prevails making terms of court continue from day to day
without an order of court, then it is surplusage for the
lawmakers to require an adjourned session," etc. The
opinion of the court plainly holds that, to continue a regu-
lar session of court, once begun, from day to day, re-
quires an affirmative order. Such is the appellees' con-
tention. The court sustains the contention of the appel-
lees and thereby overrules the contention of appellants.
There is no middle ground between these contentions.
Now, if an affirmative order continuing the session of
court from day to day or to a more distant day is neces-
sary to prevent the term from lapsing and to preserve
the court's jurisdiction, then, at the close of a day's ses-
sion of court, if the court for any reason whatever fails
to make an order adjourning the session till the next day
and so on, or to a specified future day, the moment the
court fails to make such order, *eo instanti*, the term lapses
and the court loses jurisdiction. What difference could
it make in such case whether the delay of the court to
return and to attempt to resume its session was for one
day or forty? Jurisdiction, is the power to hear and
determine causes. *Rose* v. *Christinet*, 77 Ark. 582, and
other cases cited in 2 Crawford's Digest, § § 1 and 2; 4
Words & Phrases, "Jurisdiction," and cases cited; 1
Black on Judgments, § 215. When jurisdiction during a
term is once lost, it is lost forever, so far as that term is
concerned. It is not a matter of degrees. Once lost, it
is beyond the power of the judge to restore it.

Again it is stated in the majority opinion that the
common law rule, for which appellants contend, "was a
part of the fiction that a term of court however long ex-
tended was but a day, and that all judgments and orders
of the court were of that same day." We can only de-
termine whether the common law rule contended for by

appellants, was a part of the common law fiction, by tracing the history of such fiction.

"Throughout all christendom, in very early times, the whole year was one continual term for hearing and deciding causes." Later, "the Church interposed and exempted certain holy seasons from being profaned by the tumult of forensic litigations," and "law terms were appointed with an eye to those canonical prohibitions." There were four of these terms, designated as: Hillary, Easter, Trinity and Michaelmas. "In each of these terms were stated days called days in bank (dies in banco), to which all original writs were made returnable," and they "were called the returns of that term." "Every term had more or less." The first return day in every term was the essoign or excuse day. Three days of grace were allowed. "Therefore, at the beginning of each term the court did not usually sit for the dispatch of business, till the fourth or appearance day." The courts sat "till the *quarto die post* or appearance day of the last return, which is therefore the end of each of them." 3 Blackstone's Com., chap. 18, pp. 274 to 279, and notes; 3 Chitty, Gen. Prac., chap. 3, p. 89, *et seq.*

At the common law writs were made returnable at least fifteen days from the date (teste) when they were issued to give the defendant time to appear "upon some day in one of the four terms in which the court sets for the dispatch of business." 3 Blackstone, Com., chap. 18, pp. 275 to 279, and notes; 3 Chitty's Gen. Prac., chap. 3, p. 89, *et seq.*

Contemporaneous with the establishment of terms of court, at least in very remote times, all judgments of the law courts, no matter on what day of the sitting or session, during the term, same were rendered, related back to the first or return day of the term in cases where they might have been rendered on that day. *Greenway et al.* v. *Fisher,* 7 B. & C. 198; *Wright et al.* v. *Mills,* Hurlstone and Norman's (Exchequer), 487-91; *Johnson* v. *Smith,* 2 Burr 967; *Wynne* v. *Wynne,* 1 Wils. (K. B.) 39; 3 Chitty, Gen. Prac. 101; 1 Black on Judgments, § 441; 1 Freeman

on Judgments, § 39. In the very nature of the case it was physically impossible for the judges and other court functionaries to hold a continuous session of court from the beginning to the close of the term. Hence it was but a fiction to say the courts were in session but one day covering the period of the entire term.

The above rule of the common law as to judgments and the fiction on which it was based, obtained in England until the act of Parliament in 1676 changed it. 29 Car. II, chap. 3.

We had a territorial statute in harmony with the common law rule passed July 3, 1807. Steel & McCampbell's Dig. Laws of Ark., p. 339, § 70; *Keatts* v. *Fowler's Devisees,* 22 Ark. 483-86. This rule and fiction of the common law were therefore a part of the common law adopted by us in the revised statutes of December, 1837. Rev. Stat., chap. 28; secs. 623-24 Kirby's Digest. The rule, however, as to judgment liens was repealed by the act of March 5, 1838. Rev. Stat., chap. 84. See also sec. 4438, Kirby's Digest.

From the above brief history we discover that "sessions" (not terms) of court, however many during the term, were all considered, by fiction of law, as of one day, the first or return day of the term, in order that judgments, no matter on what day they were in fact rendered, might relate back and take effect as of the first, or return day when they might have been rendered. We discover that this fiction of the common law as to sessions of court and the rule as to judgments were adopted by and remained with us for a short time, until expressly abolished by statute.

Let it be observed that there was never any fiction at the common law concerning the "term" or "terms" of court. The fiction was concerning the "session" or "sessions" of court. There is a clear distinction between the words "term" or "terms" of court and the words "session" or "sessions" of court. The word "term" when used with reference to a court signifies the period during which the court may, or may not, be in

actual session, while the word "session" signifies the time during the term when the court actually sits for the transaction of business. The session commences when the court convenes for the term and continues (by fiction) until final adjournment either before, or at the expiration of the term. "The term of the court is the time prescribed by law during which it may be in session. The session of the court is the time of its actual sitting." Bouvier's, Anderson's, Black's Law Dic., *verba,* "term" "Session;" Webster's New Int.; Funk & Wagnall's Dic. *verba* "term" "Session." See also *Horton and Heil* v. *Miller,* 38 Pa. St. Rep. 270.

There may be, and usually are, many sittings or sessions of court during a term, with intervals, long or short, as the convenience of suitors and the exigencies of the business require, to be determined by the presiding judge. The jurisdiction of the court to continue to hold a session during the term is not affected by the number of sessions, the length of time between them, or the failure of the court to hold a session as per the day appointed. The jurisdiction to hold a session during the term continues to the end thereof, unless the court sooner adjourns its sessions finally or for the term. However, to say that such sessions, broken by intervals of days, weeks or months, is a continuous session as of one day, is to express a fiction. But since a "term" of court by the common law, as shown above, is a period during the whole of which sessions of court might be held, it is not a fiction, but a reality, to speak of it as if it were but one day. In other words, a "term" of court, spoken of as a period during the whole of which sessions of court may be had, is an integer, like as a day is an integer in the calendar for measuring time.

I am aware that lawmakers, lexicographers, authors of text-books on the law and judges of courts frequently use the words "term" and "session," when applied to courts, interchangeably and often synonymously. But if traced to their origin and critically examined it will be found that the distinction between them is quite clear.

As is said by the Supreme Court of Texas in *Lipari* v. *State,* 19 Texas Cr. App. 431-33: "It is true that lexicographers give very nearly the same meaning to the two words, and make them almost synonymous; yet it will be found upon close examination that the distinction in their signification, which we have stated, is the correct one."

A failure to observe the distinction between the words "term" and "session," and the use of the words synonymously, and interchangeably, I opine would be of little or no practical importance except in cases where such use affected the jurisdiction. Such is the case here.

The fiction therefore at the common law was that all sessions of court, held on different days, however many, of the term, were considered as a continuous session of one day. And the purpose of this was that all judgments might take effect from that day. I fail to see that such fiction has any connection whatever with the common law rule that a term of court was a fixed period which, as to continuity, not length, was regarded as a matter of fact, not fiction, as one day in which sessions of court might be held.

In *Ex Parte Baldwin, supra,* the Chief Justice, speaking for the court, said: "The ancient rule was that a term of court was considered as of one day and the court deemed to be in session until final adjournment." Thus we recognized, by way of historical narrative, the continuity of a term and also of a "session" of court at the common law, but we were not called upon by the facts to make any distinction in their meaning and we did not do so. Further along in the opinion, however, we used this language: "Our statute manifestly contemplates different days of the term of court." And in *State ex rel. Hall* v. *Canal Construction Company,* we repeated this language, and added: "Section 1531 of Kirby's Digest provides for the adjournment of court to a distant day. This shows that we have departed from the common law rule that a term of court shall be considered as one day." It is now urged by counsel for appellees that this court by the use of the language, "our stat-

ute manifestly contemplates different days of the term of court,'' decided that the common law rule for which appellants contend has been abrogated. To correctly interpret the language of an opinion it must be construed in the light of the facts upon which it is based. In *Ex Parte Baldwin* and *State ex rel.* v. *Canal Construction Company, supra,* the court dealt with affirmative orders adjourning the regular term of court to a special adjourned session, *i. e.,* a session beyond the period fixed for the regular term. True, Judge Hart in the latter case states that the ''court adjourned to a fixed day later in the term.'' But this was a mistake of fact and doubtless an inadvertence. I mention it here for the sake of accuracy and because whatever may be the language in the opinion, the decision was correct by reason of the fact that the court session was adjourned for the period of the regular term, and to a special adjourned session beyond it. So that the court did not have before it in the above cases the issue as to whether or not there was a continuity of the regular term. The court, therefore, by the language used, in these opinions could not have properly decided, that the common law rule as to the continuity of a term of court as contended for by appellants, had been abrogated by our statute. Any language in the opinions of those cases susceptible of such construction would be the purest *obiter.*

Since the issue is now so sharply drawn between us as to what was really decided in those cases, I am free to confess that the language, ''our statute manifestly contemplates different days of a term of court,'' and other language there used, was not as clear as it might or should have been to prevent any possible confusion and misapprehension of the law. The language, ''our statute manifestly contemplates different days of the term of court,'' should be construed to mean that the statute contemplates different days during the fixed and continuous period set apart by law for a term of court, in which sessions of court may be held. The history, *supra,* of terms of court discloses that at the common law there

were different days of a term of court during which a session of court might be held. Therefore, the common law rule contemplates different days and in this respect is in perfect harmony with our statute.

Section 1531 of Kirby's Digest, which the court now holds abrogates the common law rule, was a part of the revised statutes (1838), yet we find this court through Judge WALKER in 1850, declaring that: "The whole term is but one day in contemplation of law." *State Bank* v. *Arnold et al.*, 11 Ark. 347. And again in 1853 this court, through the same judge, says: "A whole term in contemplation of law is considered as one day, and, by a legal fiction, it may be said that time between the submission and detemination of a cause is but one day. So that the practice may be settled by long usage in this court upon the authority of numerous decisions of other courts directly in point, and upon reason and analogy." *Cunningham* v. *Ashley et al.*, 13 Ark. 653-73. Here it may be noted, in passing, that the learned judge in speaking of the continuity of a term of court as of one day, did not say it was because of any fiction. But when he referred to the session as being but one day (although of much longer duration) he says this was "by a legal fiction." Thus in applying the fiction to the "session" and not to the "term" of court, he observed the proper distinction between them.

Our attention was called to *Cunningham* v. *Ashley et al., supra*, in *Ex Parte Balwin, supra*, and if the court had intended in the latter case to overrule the doctrine that "a whole term in contemplation of law is considered as one day," the court would have so stated in express terms and would have commented upon and overruled *Cunningham* v. *Ashley et al., supra*. In *State ex rel. Hall* v. *Canal Construction Company*, the court only followed *Ex Parte Baldwin*. So I conclude that we have heretofore decided that a term of court is a continuous period as of one day, and that *Ex Parte Baldwin* and *State etc.* v. *Canal Construction Company* do not decide to the contrary.

But let me concede for the sake of the argument, that at the common law there was a fiction concerning the continuity of a term of court, and that a "term" of court and a "session" of court have precisely the same meaning. Then it is certainly true, as we have seen, that the fiction of the common law which considered a "term" or "session" of court (using the words synonymously) as of one day, had its origin in the purpose to have all judgments entered as of the first or return day of the term. This fiction, therefore, was abolished not by section 1531, as contended by the majority, but by the statute, *supra,* making all liens of judgments take effect from the day of their rendition.

Now because the fiction pertaining to the date of the rendition of judgments, so as to make their liens take effect from the same day, has been abolished, is no reason for holding that all other useful rules of procedure growing out of the fiction have also been set aside. On the contrary these other rules should be preserved and the fiction retained if necessary for that purpose. There is nothing sacrosanct about legal fictions further than they may be made to serve the ends of right and justice. The ancient maxim is that: "All fiction of law is founded in equity." "Equity is the life of legal fiction." Brooms Legal Maxims, 106. In *Morris* v. *Pugh,* 3 Burr. 1243, Lord Mansfield remarked: "Fictions of law hold only in respect of the ends and purposes for which they were invented," and to this may I add, that with respect to such ends and purposes they should, and do hold, until expressly repealed by statute.

If the rule for which appellants contend had its origin in a fiction of the common law, and if that fiction has been abrogated by statute, and if such annulment carries with it the rules of practice growing out of the fiction (as the majority now hold) then, not only the rule under review but other rules founded on the fiction, long established, often approved by this court, and, until now, deemed prerequisite to the administration of justice, have also been annulled. For example growing out of the fic-

tion that a session is deemed as of one day is the rule mentioned in *Cunningham* v. *Ashley, supra,* that where either party dies after the cause is submitted and before final judgment, the judgment may be rendered in the names of the original parties as of a day previous to such death. *Pool* v. *Loomis,* 5 Ark. 110. See also *Trapnall et al.* v. *Burton et al.,* 24 Ark. 372-73 (last syllabus). Another rule based on the fiction is that a court has the power during the whole of the term at which a judgment or order is rendered to set aside, vacate and annul its judgments and orders. Such has been the unvarying rule in this State from the first, and it has been the rule in all other jurisdictions, State and Federal, in this country. *Keatts* v. *Rector,* 1 Ark. 391; *Smith* v. *Dudley,* 2 Ark. 66; *Walker et al.* v. *Jefferson,* 5 Ark. 23-25; *Ashley* v. *Hyde,* 6 Ark. 100, and other cases cited in 3 Crawford's Digest, p. 3017, "Judgments," and on down to *Wells Fargo & Co.* v. *Baker Lbr. Co.,* 107 Ark. 415; 23 Cyc. 901, and cases in note.

If a question were presented to this court involving the existence of the rules last above mentioned, we could not logically escape the conclusion, under the doctrine of the majority opinion, that since the fiction that a term or session of court was but one day had been abrogated by statute, all the rules founded upon the fiction had died with it. All general courts of record in the meanwhile would be justified in so construing the opinion.

*Third.* The circuit court erred in quashing the judgment of the county court creating the district for the reason that appellees delayed for a period of nearly eight months after the judgment was rendered before filing their petition for writ of *certiorari.* The court disposes of appellants' contention on this branch of the case as follows:

"We are of the opinion that the trial judge did not abuse his discretion under the circumstances in granting the relief sought. The record shows that the petition for *certiorari* was filed in the circuit court on September 30 and it was heard at the October term, 1918. In the

meantime appellees were contesting their assessments and as a part of their contest brought up for review the county court's record establishing the district. The amount of assessments of benefits had not been finally settled when the present attack on the validity of the organization was begun. We are of the opinion that appellees are not chargeable with unnecessary delay.''

There is no allegation in the petition for *certiorari* giving any cause or excuse for the delay in presenting the petition. No proof was adduced at the hearing showing any cause or excuse for the delay. Indeed appellees do not pretend in their brief that there was any excuse for the delay.

The record shows that the assessments were challenged on the ground that the court was not legally in session and because of alleged jurisdictional defects growing out of a failure to comply with certain statutory requirements in making the assessments. Appellees now contend that appellants' charge against them of unreasonable delay is fully answered by the fact that they, in apt time, attacked the assessments on the ground that the county court had no jurisdiction to establish the district. They also contend that the question of jurisdiction to establish the district could be raised by appellees at any time in the absence of any act on their part creating an estoppel. The court sustains appellees' contention that there was no unreasonable delay on their part because they, ''as a part of their contest, brought up for review the county court's record establishing the district.''

Section 3 of Act 338 of Acts of 1915, provides: ''The order of the county court establishing a road improvement district shall have the force and effect of a judgment and shall be deemed conclusive, final and binding upon all territory embraced in said district, and shall not be subject to collateral attack, but only to direct attack on appeal. Any property owner may appeal from said judgment within thirty days by filing an affidavit for appeal, stating in said affidavit the special matter on which

the appeal is taken." In sections 13 and 14 provisions
are made for the property owners to contest the assess-
ments. The proceedings are expressly limited to the
"purpose of having any errors adjusted, or any wrong-
ful grievous assessment corrected" and "any owner of
real property in the district may appeal from the judg-
ment fixing the assessment of benefits or damages."

This court in the very recent cases of *Chicago, R. I. &
P. Ry. Co.* v. *Road Improvement District No. 1 of Prairie
County,* 137 Ark. 587, 209 S. W. 725, and *Mo. Pac. Rd. Co.*
v. *Conway County Bridge Dist.,* 134 Ark. 292, held under
special statutes, containing similar provisions to those
above quoted, that on appeal from final order or judg-
ment adjusting and assessing the benefits, "the inquiry
should be confined to an ascertainment of the benefits;"
that the validity of the special statute creating the dis-
trict was not involved on an appeal from the order of
assessment of benefits, but that the validity of the stat-
ute could only "be tested in another appropriate action
instituted for that purpose." In the first of the above
cases we said: "The prosecution of the appeal to the
county court, and then to the circuit court, could only
raise the question of correctness of the assessment of ben-
efits, and we confine ourselves to a consideration of that
issue without looking to the statute to determine whether
any other objections can be made to the proceedings."

"Ignorance of the law excuses no one." In contem-
plation of law as settled by the above cases the appellees
by an appeal from the order assessing the benefits,
"could not bring up for review the county court's record
establishing the district." In precise words, the major-
ity decides in the present case that this can be done as an
excuse for the delay of appellees in applying for the writ
of *certiorari.* How this decision can be reconciled with
the above cases baffles my comprehension. The above
cases are not referred to in the majority opinion. There-
fore it was not the intention of the court, I take it, to over-
rule them.*

---

*See opinion in case of *Kansas City S. Ry. Co.* v. *Road Imp. Dist.
of Little River County* (Reporter).

Appellees are represented in this lawsuit by able attorneys. We may safely assume they knew, or should have known, that the statute under which this district was created provides that an appeal may be taken from the judgment of the county court establishing the district within thirty days, and that "any party not appealing within the time prescribed shall be deemed to have waived any objections he may have to said order, and to have relinquished all rights he may have to question same." Section 3, Act 338, *supra.* We may also assume that appellees' counsel were familiar with the above decisions. However this may be, appellees must be held to have had knowledge of the above statutes and decisions. But whether they had actual knowledge thereof or not they are bound by the law.as if they had. Appellees should not be allowed to avail themselves of the affirmative relief they seek by setting up as an excuse for their delay a mistake of law pure and simple made alone by themselves or their attorneys. "Where the general law of the land—the common jus—is involved, a pure and simple mistake in any kind of transaction cannot be relieved." 2 Pom. Eq. Jur., sec. 849. It therefore appears that appellees allowed the time to expire for taking an appeal from the judgment establishing the district, and permitted the labor and expense incident to such proceedings as if they were valid; that they attempted to raise the issue of the validity of the order establishing the district for the first time on appeal from an order adjusting the assessment of benefits, when they knew or, at least, by reasonable diligence, should have known such issue could not be so raised; that they waited for a period of eight and one-half months before asking the writ of *certiorari* to quash the judgment creating the district. Instead of holding under the above facts that appellees "are not chargeable with unnecessary delay," the holding, it occurs to me, undoubtedly should be that their delay was unreasonable and without even a shadow of excuse.

The Alexander law is a general law "for the creation and establishment of road improvement districts.

for the purpose of building, constructing and maintaining the highways of the State of Arkansas.'' (Title of the act.) The work affects the public and is of a public nature. ''In cases of highway proceedings, the interest of the public being at stake, the petitioner must make speedy application to entitle him to a review of the proceedings.'' 4 Enc. P. & P. 143. See *State* v. *Ten Eyck*, 18 N. J. Law, 373, and other cases cited in note. ''Where a reversal of the proceedings sought to be reviewed would result in detriment or inconvenience to the public, or is calculated to derange the interests of society, a party is required to act speedily in making his application, and any unreasonable delay in so doing will warrant the dismissal of the writ.'' 4 Enc. P. & P. 133; *Keys* v. *Marion County*, 42 Cal. 252-56 (a public road case), and other cases cited in note; 11 C. J. 134, and cases. See also *Black* v. *Brinkley*, 54 Ark. 372; *Johnson* v. *West*, 89 Ark. 604, 117 S. W. 770; *Sumerow* v. *Johnson*, 56 Ark. 80.

But regardless of the public interest involved, in the absence of statutory regulations, the writ of *certiorari* must be applied for within a reasonable time after the assailed order or judgment has become final. What constitutes a reasonable time is a question within the sound judicial discretion of the court. This discretion is not absolute. It must not be arbitrarily or capriciously exercised, but must be exercised according to the settled principles of law applicable to the case in hand, and have some basis of reason and justice to rest upon. The writ is an extraordinary remedy. It will lie to vacate a final order or judgment of the tribunal to which it is issued, where that tribunal exceeded its jurisdiction. The burden is upon the one who invokes this remedy to allege facts that will entitle him to it. If the facts alleged are denied he must exonerate himself from laches, even before he is entitled to an issuance of the writ. If the writ has issued and return made thereon then he must be prepared to prove that he proceeded with reasonable dispatch to ask for such relief. Where there has been unreasonable delay in applying for the writ the petitioner

must show some legal excuse therefor. Where the petitioner fails to prove that he moved with reasonable diligence, after the order or judgment became final to have same set aside, then if the writ was issued under such circumstances it was done improvidently and the trial court abuses its discretion if it fails to quash the writ. Especially is this so where the public interest is affected. Such failure is an error for which this court on review will reverse the judgment of the trial court. These are familiar rules of law concerning *certiorari* as settled by our own court. *Randle* v. *Williams,* 18 Ark. 380; *Flournoy et al.* v. *Payne,* 28 Ark. 87; *Moore* v. *Turner,* 43 Ark. 243; *Pearce ex parte,* 44 Ark. 509; *Burgett* v. *Apperson,* 52 Ark. 214-22; *Black* v. *Brinkley, supra; Sumerow* v. *Johnson, supra; Johnson* v. *West, supra.* See also to same effect cases cited in 1 Words and Phrases, 618, *"Certiorari" "*As Discretionary Writ," 5 R. C. L. 253-4, secs. 5-6; 11 C. J., secs. 125-133-141-172-293-295-309-374-397-410.

In *Black* v. *Brinkley, supra,* we held that, ''where the application was made eight months after the final judgment, to set same aside, where no excuse for the delay was offered, the writ will be refused.'' In *Johnson et al.* v. *West, supra,* we said, quoting from the last case: ''The rule is to refuse it when the party seeking it fails to show that he has proceeded with expedition after discovering that it was necessary to resort to it, and especially where great public inconvenience will result from its use.'' The latter case was an effort by *certiorari* to quash the judgment of the county court establishing a public road, and there was a delay of eleven months, which we held was unreasonable.

If the doctrine of these and other cases cited above had been applied to the facts of this record, the judgment of the circuit court would have been reversed, and the cause remanded with directions to quash the writ of *certiorari* and to affirm the judgment of the county court establishing the district. The case properly should have ended here with that result.

*Fourth.* In conclusion let me say, that from my point of view a misconception of the facts has led to an erroneous decision against appellants.

However much I may differ with my associates on the facts, if that were all, I would not have dissented. But the court, as I see it, has also misapprehended the law concerning *certiorari,* and concerning the continuity of a "term" of court. In so doing it has overruled, by clear implication, several decisions of this court.

In failing to observe the distinction in meaning between "terms" of court, and "sessions" of court, the opinion of the majority practically makes every day's session of court a term, and if the lower courts fail by affirmative order entered upon their records to adjourn each day's session to another day, the term lapses, and they lose jurisdiction over that term. The rules now adopted in the majority opinion, unless changed by this court, or legislative fiat, will be binding on this and all other general courts of record in this State.

In cases where property rights are involved they will become rules of property. The rules now approved, if adhered to, will necessarily set aside other rules which have become so firmly imbedded in the jurisprudence of our State, that to uproot them now, will lead to inextricable confusion and do irreparable mischief.

On account of the general and far-reaching consequences of the majority opinion, under the rules sanctioned by it, I do not recall that any more important questions have been presented for decision than are presented in this case since I have been a member of this court.

If I am correct in the views I have expressed, then the opinion of the majority is fraught with infinite possibilities of harm in the administration of the law, and is unsound through and through and all the way round. So believing, I have entered upon this dissent, and have endeavored without regard to the length of my own opinion, as best I could to analyze the opinion of the majority and to review the case from every possible angle, in or-

der to uphold what I conceive to be the correct rules of practice. I realize that dissenting opinions are seldom read in the jurisdictions where they are rendered, therefore, their preparation, for the most part, is a work of supererogation. But if the researches I have made and the thoughts I have here registered shall be found, in the least, helpful to practicing lawyers, or trial judges in our own or other jurisdictions, I shall be fully compensated for the time and labor given this opinion and shall feel that my efforts have not been altogether in vain.

HUMPHREYS, J., concurs in this dissent.