STATE *ex rel.* HALL *v.* CANAL CONSTRUCTION COMPANY.

Opinion delivered May 6, 1918.

1.   STATUTES—POWER OF LEGISLATURE TO PASS HEALING ACTS.—The Legislature has power to pass healing acts which do not impair the obligation of contracts nor interfere with vested rights.

2.   STATUTES—HEALING ACTS—IMPROVEMENT DISTRICTS.—In statutes governing improvement districts, if a defect consists in doing some act, or in the mode or manner of doing it, which the Legislature might have made immaterial by a prior law, it may do so by a subsequent one.

3.   IMPROVEMENT DISTRICTS—ORGANIZATION—CURATIVE ACT.—The statute authorizing the organization of improvement districts provided that no bids shall be entertained which exceed the estimated cost of the construction more than 25 per cent; *held,* this provision was not necessary in the original statute, and hence the Legislature by a later statute may dispense with it.

4.   IMPROVEMENT DISTRICTS—DRAINAGE—ESTIMATED EXCAVATION—ERROR—CURATIVE ACT.—Under the statute providing for the organization of an improvement district, an error was made in the engineer's estimate of the amount of excavation. The contractor bid upon the erroneous estimate. *Held,* it was proper for the Legislature thereafter to pass an act providing for payment for the increased cost of the improvement.

5.   COURTS—ADJOURNMENT OF COUNTY COURT.—Where a county court met on the day fixed by statute, and immediately adjourned to a future day, any order made by the court in the interval is made

in vacation, and the judge can not convene the court and transact business in the said interval.

6. IMPROVEMENT DISTRICTS—ASSESSMENTS—ORDER MUST BE MADE DURING SITTING OF COUNTY COURT.—The order of the county court providing for additional assessments to cover the cost of a drainage district must be made during the sitting of the court, and can not be made in vacation.

Appeal from Poinsett Chancery Court; *George T. Humphries,* Chancellor: reversed.

*Hawthorne & Hawthorne,* for appellants.

1. The order of the court was void for fraud and collusion. It was in excess of 25 per cent. of the estimated cost for the completed work. Kirby's Digest, § 1416, 1420, 1431, etc. This was not cured by the curative Acts of 1909 and 1913. 90 Ark. 166; 94 *Id.* 588; 100 *Id.* 63, 390; 114 *Id.* 551; 79 *Id.* 289; 48 Fed. 182; 20 Cal. 442; 45 N. E. 207; 50 *Id.* 1052, etc.

2. No notice was given property owners as provided by law. The court had no authority to make the additional levy. The contract was let for a gross sum. 83 Ark. 344; 86 *Id.* 231; 164 U. S. 112; 94 Ark. 338; 64 *Id.* 108; 126 *Id.* 518.

3. The order was made in vacation. 71 Ark. 226.

4. Mistakes like this can not be corrected. 54 Ill. App. 371; 12 *Id.* 273; 69 S. W. 255; 101 Pac. 957; 157 Fed. 227; 105 Ark. 37; 84 *Id.* 349; 71 *Id.* 185; 91 U. S. 50; 38 S. E. 160; 94 Ind. 211.

5. Plaintiffs are entitled to recover the excess paid on a void contract. There was no authority to levy the additional assessment. 94 Ark. 338; 64 *Id.* 108; 126 *Id.* 518. The canal company can not recover for the additional yardage as its original bid was excessive, and the curative acts could not cure this. Judgment should be entered here for the $17,512.76. 115 Ark. 587; 43 L. R. A. 584; 96 Ark. 410; 65 *Id.* 498; 86 *Id.* 498; 86 *Id.* 109; 39 Tex. 236; 42 N. Y. 676, etc.

*N. F. Lamb,* for appellee.

1.    The judgment was rendered in open court, and was not a vacation order. 7 R. C. L. 991, § 18; 77 N. W. 925; 118 Ark. 416.

2.    The judgment of October, 1914, term is right and from a standpoint of justice between the parties should be treated as valid, even in the absence of notice. 50 Ark. 458; 51 *Id.* 341; 52 *Id.* 81; 54 *Id.* 1; 56 *Id.* 516; 57 *Id.* 352; 72 *Id.* 101-106; 74 *Id.* 292; 81 *Id.* 352; 84 *Id.* 527; 86 *Id.* 591; 94 *Id.* 347; 104 *Id.* 449; 107 *Id.* 415.

3.    There was no fraud nor conspiracy.

4.    If the bid exceeded 25 per cent. of the estimated cost, it is not void. All irregularities were cured by the Acts of 1909 and 1913.

5.    No defense was shown to the proceedings. The work has been done. If a mistake was made it was properly corrected. All that the county court did at the October, 1914, term was by consent of all parties, after thorough investigation into the mistake. 73 Ark. 281. Equity and justice have been done and the decree should be affirmed.

### STATEMENT OF FACTS.

On the first day of May, 1916, appellants brought suit in equity against appellees to enjoin them from collecting levee taxes under an alleged void order of assessment and also to declare void said assessment as a cloud upon the title of their lands. The record is voluminous. So in our statement of facts only such parts of the record will be stated or referred to as will be necessary for a determination of the issues raised by the appeal. Drainage District No. 3 was organized in 1907, under our general statutes relating to the subject. Kirby's Digest, § 1414 *et seq.* The cost of the construction of the main ditch and the laterals, as shown by the report of the engineers and viewers, was $108,000. In January, 1908, the contract for the construction of the proposed improvement was offered at public letting, and the Canal Construction Company, having offered to perform the work for $230,231.50,

was given the contract therefor. There was a mistake made in the advertisement, and the work was again advertised to be let at public bidding. The Canal Construction Company again bid the sum of $230,231.50 and became the contractor for the construction of the improvement. It was shown by witnesses that Cole & Hardy offered to perform the work for a less sum.

On the other hand the president of the Canal Construction Company testified that Cole & Hardy did not make a bid on the work in this district, but made a bid on the work in another drainage district in Poinsett County which was let at the same time. Be that as it may, a written contract was entered into between the board of directors of the drainage district and the Canal Construction Company for the construction of the proposed improvement. We quote below such portions of the contract as we deem necessary for a proper determination of the issues raised by the appeal. One section of the contract reads as follows:

"Witnesseth, that the Canal Construction Company of Chicago, Illinois, has this day contracted and agreed with the county court of Poinsett County, Arkansas, acting for the use and benefit of Drainage District number Three (3), in said Poinsett County, to clear the right-of-way and make all excavation necessary in the construction and completion of the ditch or canal in Drainage District Number Three (3), and the nine (9) lateral ditches in said Poinsett County, as the same is now set forth in the map of said Drainage District Number Three (3) and the profile of the said ditch or canal in said Drainage District Number Three (3), now on file in the office of the clerk of said county court of Poinsett County, at and for the sum of thirteen and 95/100 (13/95) cents per cubic yard, or the gross sum of $230,231.50 for 1,650,-405 cubic yards shall be taken as full payment for both the clearing of the right-of-way and the excavation necessary in the construction of said ditch or canal and that no estimate shall be made or charge made or money collected on account of the clearing of the right-of-way."

The engineer of the district made detailed estimates of the cost of the work and showed in his estimates the cost of the work in each station.

Another clause of the contract reads as follows:

"And the said Canal Construction Company does hereby further agree that the number of cubic yards in each station or section of the said. ditch or canal shall be taken as correctly estimated in the table of cubic yards by stations of one hundred feet each in length now on file in the office of the clerk of Poinsett County, Arkansas, and in no event shall the Canal Construction Company ask for a greater number of cubic yards in any section or station of one hundred feet than is set forth in said tabulated statement; and the same is hereby made a part of this contract and agreement in the same sense as if the same were hereto attached and made a part hereof."

After the work had progressed until about 87 per cent. of it had been done, it was discovered that a mistake had been made in footing up the estimates so that it was necessary in order to construct the ditch as provided in the contract that an additional 117,503 cubic yards of earth be removed.   The contractor claimed that under his contract with the drainage district he was to receive 13/95 cents per cubic yard for all the earth excavated and refused to excavate the 117,503 cubic yards of earth required to complete the improvement unless he was paid therefor the sum of 13/95 cents per cubic yard, amounting in the aggregate to $16,328.89.   After consultation with the commissioners for the district and the county court, it was agreed that the construction company would be entitled to this additional amount under its contract with the district.   The Canal Construction Company then proceeded with the work and finished its construction in the fall of 1913.   On the 26th day of October, 1914, an order was entered upon the records of the county court providing for an additional assessment against the various tracts of land in the district for the payment of this additional cost.   This order purports to have been made under section 5, of Act 23 of the Acts of 1913.   This act

was passed for the purpose of curing defects and ratifying all the proceedings for the establishment of certain drainage districts in Poinsett County, including the one in question. It is claimed by appellees that this order was made during the sitting of the county court, and by appellants that it was made in vacation and on that account is void. The purported order levied additional assessments payable in one, two and three years for the purpose of paying the additional costs above referred to. Hence this lawsuit. Other facts will be stated or referred to in the opinion.

The court found the issues in favor of appellees and the case is here on appeal.

HART, J., (after stating the facts). It is contended by appellants that appellee, Canal Construction Company, can not recover the cost of the additional yardage for the reason that its original bid was in excess of 25 per cent. of the estimated cost for the completion of the work. Section 1431 of Kirby's Digest provides that no bids shall be entertained which exceed the estimated cost of the construction more than 25 per cent. in any case. The statement of facts shows that the gross sum bid by the Canal Construction Company for the construction of the improvement was $230,231.50. This, it is claimed was more than 25 per cent. of the estimated cost of the improvement. This defect in the organization of the district was attempted to be cured by two acts subsequently passed. The Legislature of 1909, passed an act to cure all defects and irregularities in the organization of certain drainage districts in Poinsett County, including the one in question.

Section 2 provides that the assessments that have been made or that may hereafter be made upon the lands in the district to pay the costs of constructing the improvement shall not be set aside or declared void by any court on account of any defect or irregularity in the proceedings or for any cause whatever. Acts of 1909, p. 308.

The Legislature of 1913, also passed an act to cure defects in the establishment of this district together with other drainage districts in Poinsett County.

Section 3 of the act provides that the special assessments which had been levied by the county court against the lands of the district shall constitute a valid and paramount lien upon such lands. The section also provides that the district shall be declared legally established.

Section 4 provides that the payment of the bonds of the district shall be secured by the special assessments levied before or which might thereafter be levied against the lands in the district on account of the location and construction of the drainage improvement.

Section 5 declares that the benefits to the lands shall constitute the basis for an assessment. It further provides that in the event the aggregate of the amount which had been apportioned and assessed against the several tracts of land in the district, shall prove insufficient to pay the costs of the location, construction and repairs of the improvement, the county court of Poinsett County may, by order entered of record, provide for an additional assessment against the several tracts of land in the district in proportion to the benefits ascertained as above mentioned.

It also provides that every such additional assessment shall be made in the manner provided by law for making the original assessment. Acts of 1913, Act 23, p. 107.

. (1-4)   It is well settled that the Legislature has the power to pass healing acts which do not impair the obligation of contracts nor interfere with vested rights. *Green* v. *Abraham,* 43 Ark. 420, and *Gibson* v. *Incorporated Town of Hoxie,* 110 Ark. 544. It is well settled in these and in numerous other cases of similar import in this State, that if the defect consists in doing some act, or in the mode or manner of doing it, which the Legislature might have made immaterial by a prior law, it may do so by a subsequent one. It is manifest that the provision that no bids shall be entertained which exceed the es-

timated cost of the construction more than 25 per cent. might have been dispensed with by the Legislature on the original statute. Hence in the application of the rule in regard to curative acts, the Legislature might dispense with this requirement by a subsequent statute. This is virtually conceded by counsel for appellants, but it is insisted by counsel that while these curative acts may have validated the proceedings, so far as the payment of the aggregate amount of $230,231.50 is concerned, its action was void so far as authorizing the payment of an additional amount for the extra yardage which was found necessary for the completion of the contract. This brings us to a consideration of the provisions of the original contract for the construction of the improvement.. By its terms the rights and obligations of the parties to it are created, and, as we have already seen, the Legislature can not pass an act impairing its obligations or interfering with rights vested under it. The subject matter of the contract was the construction of the drainage ditch or canal. In order that contractors might more intelligently bid upon the work of construction, the engineer for the district made a survey of the proposed route and laid it off into numerous stations. A detailed estimate of the amount of dirt to be removed on each station was prepared by the engineer and submitted to the bidders as a part of the specifications. It seems that in footing up the totals a mistake was made in the amount of yardage of earth to be excavated before the ditch could be constructed according to the specifications. This was not discovered until more than 80 per cent. of the work of construction had been completed. The construction company refused to go any further until the mistake was corrected. It claimed that it made its bid at a certain per cent. per cubic yard and that the gross sum named in the contract was simply the estimate of the total cost under the specifications. We think this construction is a reasonable one and is borne out by the two sections of the contract which we copied in our statement of facts. The bid of the construction company was predicated upon the

correctness of the estimates prepared by the engineer of the drainage district. It could not intelligently make a bid without surveying the work itself or adopting the survey and estimates made by the engineer of the district. Doubtless the parties had gone over the proposed route and had observed the kind of earth that was necessary to be removed and the amount they would bid, of course, would largely depend upon the number of cubic yards of earth to be removed. The construction company would be entitled to be paid for the total number of the cubic yards of earth excavated by it at the percentage price per cubic yard named in the contract. Their rights under the contract could not be subsequently impaired either by the drainage district or by the Legislature. Recognizing that vested rights under the contract could not be interfered with, the Legislature passed the Act of 1913 referred to above, curing all defects and ratifying all proceedings for the establishment of the drainage district and providing for additional or new estimates upon the lands in the district. Acts of 1913, Act 23, p. 107.

(5-6)    As we have already seen, section 5 provided that the county court by an order entered of record might provide for additional assessments against the lands if it should be found that the aggregate of the amounts already assessed should prove insufficient to pay the costs of the improvement. Under this section the county judge caused the order dated October 26, 1914, to be entered upon the records of the county court. It will be noted that under the terms of the act the order must be made by the county court and could not be made by the judge thereof in vacation. The opening order of the county court for the October, 1914, term is as follows:

## "OPENING ORDER

State of Arkansas,
County of Poinsett.

    "Be it remembered, That on this the 5th day of October, the same being the first Monday in October, and the time fixed by law for the holding of a term of the Poin-

sett County Court; present and presiding was the Hon.
B. F. Cole, judge of said court; also present and assist-
ing in holding said court was the Hon. A. H. Landers,
clerk of the said court, and J. C. Hooten, sheriff of said
court, and after proclamation of the sheriff in opening
said court that following proceedings were had and done,
towit:

"Ordered that court adjourns until October 28, 1914.
"B. F. Cole, Judge."

The order in question is entered upon the record of
the court following the opening order and purports to
bear the date of October 26, 1914. Under our statute
certain times and places are fixed by law to hold court.
In the instant case the court was open at the time and
place and in the manner provided by law. It was a matter
which rested in the discretion of the presiding judge to
hold the court open until all its business had been dis-
patched or to adjourn to a day certain. It appears from
the record that on the opening day the court adjourned
to a fixed day later in the term. This he had the power to
do. *Dunn* v. *State,* 2 Ark. 229; *State* v. *Williams,* 48 Ark.
227, and *Streett* v. *Reynolds,* 63 Ark. 1, and *Ex parte
Baldwin,* 118 Ark. 416.

When the court adjourned to a day certain, all per-
sons interested had the right to remain away until the
day fixed by the court to convene again, and the judge
could not before that day arrived convene the court and
proceed with the dispatch of the cases and other matters
pending therein. The fact that by a statute in this State
courts must be held at fixed times and places, raises the
implication that courts can not assume a vagrant char-
acter and hold their sessions at other times or places than
those provided by law. *Mell* v. *State,* 133 Ark. 197. The
presiding judge had no right to convene the court on the
26th day of October, after having adjourned it to a fixed
day which was later in point of time. Therefore the
order entered upon the record of October 26, 1914, was
made in vacation and furnished no basis for an additional
assessment of the land that was within the district. To

make such assessment a valid one we are of the opinion
that it must be made by the county court during its sit-
ting and not in vacation. The last part of the section
which provides that every such additional assessment
shall be made in the manner provided by law for the
making of the original assessment means that it must
follow the general method and form provided for making
the original assessment. It does not refer to the notice
to be given in the original assessment as contended by
counsel for appellants. This is obvious when we consider
the statute in connection with the object sought to be ac-
complished by it. It was evidently the intention of the law
makers to provide for an additional assessment to cover
the cost of the additional yardage which had been found
to exist by reason of the mistake in making the totals of
the original estimates on the various stations. ·The fram-
ers of the statute evidently intended to give to the county
court the power to make this additional assessment and
provided that it should be made in the general method
or form provided for in the original assessment. Be-
cause the order for the additional assessment was made
in vacation and not during the session of the court, the
decree will be reversed and the cause remanded for fur-
ther proceedings not inconsistent with this opinion.

HART, J., (on rehearing). Counsel for appellee in
their motion for a rehearing rely upon the case of *Ex
parte Baldwin,* 118 Ark. 416. ιWe do not think that case
sustains the position taken by counsel. We did not over-
look it in our original opinion but thought that it rather
tends to uphold the decision of the court. There the
circuit court record showed, "Ordered that court ad-
journ until—————," and immediately following
the entry, "ordered that court adjourn until Thurs-
day morning, March 4, 1915." The court was of the
opinion that the first order showed on its face that it was
incomplete and that it was controlled by the subsequent
entry on the same day showing that the adjournment was
to a definite date. Hence the court held that the term did
not lapse. In that case the court said that our statute

does not take account of parts of days and for that reason has the power to reconvene on the same day for the purpose of transacting business even after it has announced an adjournment. The court, however, expressly stated that our statute manifestly contemplates different days of the term of court. Section 1531 of Kirby's Digest provides for the adjournment of court to a distant day. This shows that we have departed from the common law rule that a term of court shall be considered as one day. For that reason when a court adjourns to a distant day and does not reconvene the same day, the functions of the court cease after the expiration of the day on which the order of adjournment is made until the day fixed for reconvening. During the interim the court has no power to transact business. In this State both the time and place of holding court in each county are fixed by law. Litigants must take notice of the time and place where courts of record are held.

When the court made the order adjourning to a distant day the litigants and interested parties had a right to assume that the functions of the court would cease until that day and that no business would be transacted in the court until the day designated for the court to reconvene.

According to the record, the court adjourned to a given day in the future and without rescinding that order convened court on a day between the date of the adjourning order and the date fixed for the court to reconvene. The order in question was made on that day and the court had no power to make it.

Therefore, the motion for a rehearing will be denied.