KOCHTITZKY v. MERCANTILE TRUST
CO. et al.

(Circuit Court of Appeals, Eighth Circuit.
November 15, 1926.)

No. 7230.

**1. Appeal and error ⊙⟶327(3)—Appeal from order denying petition of intervener for share of taxes levied by drainage district, and directing payment to trustee under indenture securing bonds, held properly taken by citation on trustee only.**

Where petition in intervention in foreclosure proceeding by trustee, under indenture securing issue of bonds by drainage district, seeking payment to intervener of proportion of taxes levied by district, was denied, and clerk directed to make payment thereof to trustee appeal therefrom was properly taken on citation served only on trustee.

**2. Drains ⊙⟶18 — Powers of Arkansas drainage district are statutory.**

The powers of an Arkansas drainage district are purely statutory.

**3. Drains ⊙⟶18 — Drainage district had no power, while bonds issued were in default, to devote any part of collected payments to payment of contractor (Crawford & Moses' Dig. Ark. §§ 3617, 3620, 3623, 3633, 3634, 3643).**

Under Crawford & Moses' Dig. Ark. § 3634, drainage district had no power to devote any part of collected benefits to payments on contract, in accordance with agreement with contractor and order of chancery court authorizing additional levy therefor, where at such time there was default in interest payments on bonds exceeding total amount of collected benefits; sections 3617, 3620, 3623, 3633, 3643, being inapplicable during such default.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Foreclosure proceeding by the Mercantile Trust Company, as trustee under an indenture securing an issue of bonds made by the Cache River Drainage District No. 2, wherein J. S. Kochtitzky intervened. From an order denying the petition for intervention, the intervener appeals. Affirmed.

Robert E. Fuhr, of Jonesboro, Ark. (H. M. Cooley and Arthur L. Adams, both of Jonesboro, Ark., on the brief), for appellant.

Charles D. Frierson, of Jonesboro, Ark., for appellees.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

STONE, Circuit Judge. The Cache River Drainage District No. 2 was formed under the authorization of an act of the Arkansas Legislature, which defined the rights, powers, duties and obligations of the district. Kochtitzky was the contractor with the district who made the improvements. The Mercantile Trust Company was trustee under an indenture securing an issue of bonds made by the district. Shortly before Kochtitzky completed the improvement under his contract, there was a default in the payment on the bonds and the trustee instituted this foreclosure proceeding in the trial court and sought the appointment of a receiver for the district (a receiver being authorized by the state statute under such circumstances). This occurred in 1924. About the same time, Kochtitzky refused to complete his contract unless some provision were made for the payment of the balance of the contract price. A contract was made between the district and Kochtitzky, which satisfied Kochtitzky as to the situation and the work was completed. The ordinary annual levy, up to that time, had been 5½ per cent. of the assessed benefits. To obtain additional funds to meet the payments to Kochtitzky under the last above contract, the district sought to increase the levy, for 1925, by 4 per cent., the increase to be applied to the Kochtitzky payments. The county court, to which the district applied for the increase, denied the application, but on appeal to the chancery court, the increase was allowed and a levy of 9½ per cent. made for 1925. The proceeds of this levy of 9½ per cent., amounting to $15,000, was collected by the receiver, appointed by the United States District Court. In some way, not disclosed by the record, this amount was paid into the registry of the court. Kochtitzky intervened in the receivership proceeding and asked that a proportion of this amount, corresponding to the 4 per cent. increase, be paid to him. The trust company opposed this intervention by answer and sought to have the entire amount paid to it for application upon the defaulted bonds. The entire amount was not sufficient to pay the amount then due and in default upon the bonds. The court entered an order "that the petition of the intervener be denied and the clerk directed to draw his voucher for the Mercantile Trust Company for fifteen thousand dollars ($15,000.00)." From that order, Kochtitzky brings this appeal.

[1] Appellee has filed a motion to dismiss this appeal for lack of proper parties. The only appellee upon which citation has been served is the trust company. It claims that the district and the receiver are necessary parties affected by this controversy and should have been made parties to this appeal and cited therein. We think this motion is not well taken and it will be denied. As to the district, it is not interested in whether

Kochtitzky or the trust company secures this fund. Both are creditors of the district. As to the receiver, the fund is not in his hands, the order is not directed to him and he has no interest in the fund.

[2, 3] The controversy, as to the merits, involves really but one question, which is whether the district had the power, while the bonds were in default and under the circumstances here existing, to devote any part of the collected benefits to payment of the contractor. In our judgment, this could not be done. The powers of the district are purely statutory. Section 3620, Crawford & Moses' Digest of the State of Arkansas, empowers the district to increase the annual levy (always within the limits of the benefits) for the purposes of completing the improvement or paying any bonds issued. Under this section, the district might have raised the levy of 1925 to an amount sufficient to have met all payments then due upon the bonds and also to have paid Kochtitzky. If there were no other provision in these governing statutes, it might well be urged that there should be participation by the two creditors in the proceeds of such an assessment. However, section 3634, which is one of the sections governing the issuance and payment of bonds, contains the provision following:

"To the payment of both the principal and interest of the bonds to be issued under the provisions of this act, the *entire* revenues of the district *arising from any and all sources,* and all real estate, railroads and tramroads subject to taxation in the district are by this act pledged; and the board of directors are hereby *required to set aside annually from the first revenues collected from any source whatever, a sufficient amount to secure and pay the interest on said bonds, and a sinking fund * * * if * * * contracted for.*" (Italics ours.)

The requirement of this quoted statutory provision is that "a sufficient amount to secure and pay the interest on said bonds, and a sinking fund if contracted for" are "required" to be set aside "annually from the first revenues collected from any source whatever." No option or discretion is left in the officers of the district as to this matter. They are "required" to make a specific disposition "annually" of the funds of the district coming into their hands. That disposition relates entirely to bonds issued by the district. It applies without exception or qualification to the payment of interest on such bonds. It applies equally to sinking funds to pay the principal of such bonds if such sinking funds have been "contracted for." To further as-

sure the legislative purpose, they are required to make this disposition "from the first revenues" collected by them. To make such assurance more complete, that requirement attaches to "revenues collected from any source whatever." It would be difficult to select words which could more clearly or emphatically express the legislative intent.

It remains to apply this clear statutory requirement to the facts in this record. That these bonds are the legally executed and outstanding unpaid bonds of the district, cannot be questioned. The annual interest (payable semiannually on February 1st and August 1st) on this bonded indebtedness was $33,000. At the time (June 29, 1925) the order here appealed was entered, there was a default on the interest due February 1, 1924, of $6,090, on the interest due August 1, 1924, of $16,500 and on the interest due February 1, 1925, of $16,500. Also, another installment of interest, amounting to $16,500 would be due August 1, 1925. Thus there was a total of $39,090 of interest due and unpaid (of which $16,500 became due in 1925) and $16,500 to be shortly due, also in 1925. We need not discuss whether the above statutory provision applies only to interest falling due in the year the collections are made or applies also to unpaid interest upon which default was made before such year of collection. This is unnecessary because the statute would at least cover defaults in interest for the year the funds were collected and here there is a default of $16,500 on February 1, 1925, which is more than enough to consume the fund ($15,000) now in question. This fund was from the 1925 assessment and collected in that year. No other funds are shown to have been collected from any source whatever during the year 1925. No other funds are shown to be collected or in the hands of the receiver or district so that this interest indebtedness might be paid therewith. In short, this fund constitutes "the first [and only] revenues collected from any source whatever" for the year 1925. The interest due that year and in default exceeds this fund. These facts bring this situation within the spirit and letter of the above statutory provision.

Appellant relies upon other portions of the statutes of Arkansas and what was done under them. Those statutes are Crawford & Moses' Digest, §§ 3617, 3620, 3623, 3633, 3634, and 3643. In so far as the provisions of those sections are urged as applicable, they may be concisely stated as follows:

Section 3617 provides that the county court shall, at the time the assessment of

benefits is filed or when thereafter called upon by the district commissioners, enter an order (having the force of a judgment) providing for the assessment upon the real property in the district of "a tax sufficient to pay the estimated cost of the improvement, with 10 per cent. added for unforseen contingencies." This tax is to be paid by such real property in proportion to the assessment of benefits thereon in annual installments of not more than 25 per centum of such tax for any one year. This tax is to be a prior lien until paid.

Section 3620 provides as follows:

"If the tax first levied shall prove insufficient to complete the improvement, or to pay the bonds, both the principal and interest, issued by the board of commissioners on account of such improvement, as hereinbefore provided, as the same shall become due and payable, the board shall from time to time report the amount of the deficiency to the county court, and the county court shall thereupon make such levy or levies on the property previously assessed for a sum or sums sufficient to complete the improvement and to pay such bonds and interest which shall be collected in the same manner as the first levy; provided that the total levy or levies shall in no case exceed the value of the benefits assessed on such property; and the performance of such duties may be enforced by mandamus at the instance of any person or board interested."

Section 3623 provides that "in order to hasten the work, the board may borrow money * * * may issue negotiable bonds therefor * * * any may pledge all assessments for the repayment thereof." Such issue shall be for 30 years or less and may be divided into annual retirements or all made payable at the same time, in which latter case, "proper provision for a sinking fund" is enjoined.

Section 3633 provides that:

"All bonds issued by commissioners under the terms of this act shall be secured by a lien on all lands, railroads and tramroads in the district, and the board of directors shall see to it that a tax is levied annually, and collected under the provisions of this bill, so long as it may be necessary to pay any bond issued or obligation contract under its authority; and the making of said assessment or levy and collection may be enforced by mandamus."

Also, that in case of a 30-day default on any such bond or interest coupon, the holder thereof shall be entitled to the appointment of a receiver "to collect the taxes aforesaid; and the proceeds of such taxes and collections shall be applied, after payment of costs, first to overdue interest and then to payment pro rata of all bonds issued by the said board which are then due and payable."

Section 3634 makes it a felony for the board or any member or agent thereof to pledge the bonds of the district to secure indebtedness or to use the proceeds from bonds for any other purpose than expressly authorized by law. It continues as follows:

"To the payment of both the principal and interest of the bonds to be issued under the provisions of this act, the entire revenues of the district arising from any and all sources, and all real estate, railroads and tramroads subject to taxation in the district are by this act pledged; and, the board of directors are hereby required to set aside annually from the first revenues collected from any source whatever, a sufficient amount to secure and pay the interest on said bonds, and a sinking fund * * * if * * * contracted for."

Section 3643 provides that interest on bonds shall be added to the tax and not construed as part of the cost of the improvement in determining whether the cost of improvement exceeds the assessed benefits.

The facts upon which appellant relies are as follows: The assessed benefits were $677,-880.79. The bond issue was for $550,000. The tax authorized and apportioned to pay for these bonds and interest was $605,000. This left an unappropriated balance of benefits amounting to $72,880.79. When appellant had completed the improvements for the district, under his contract, except two small lateral ditches, the district could make no further payments as its funds had been consumed. An arrangement was then made between him and the district to the effect that if he would complete the work the district would set aside and pledge the unappropriated benefits ($72,880.79) to the payment of the indebtedness due him. Under this arrangement, he completed the work. Thereafter, he sought, in the county court, a tax levy for 1925 and 1926 against these unappropriated benefits to pay the indebtedness due him. An appeal to the chancery court resulted in an order setting aside and segregating these unappropriated benefits ($72,-880.79) to the payment of this indebtedness and directing the levy for that purpose to be made for the years 1925 and 1926. The existing levy, to care for the bonds, was 5.5 per cent. for the year 1925. This was increased to 9.5 per cent.—the additional 4 per cent. being under the above order and for the

above purposes. Thereafter, the United States District Court (in the receivership proceeding which had been filed before the above order for additional levy) appointed a receiver and in the order of appointment, *inter alia,* stated:

"It is further ordered that the additional levy of four per cent., which was made in said district by the judgment of the circuit court of Greene county, raising the rate of annual payment from 5.5 per cent. of the assessed betterments to 9.5 per cent. of the assessed betterments be established also as the levy of this court, and this court hereby levies the said 9.5 per cent. upon the assessed benefits in accordance with the judgment entered by the circuit court of Greene county, until a further levy, or modification thereof, be found necessary by this court.

"And the receiver is authorized to employ the collector of revenue of Greene county to collect said levy, and all other special assessments due in said district now or hereafter to be fixed, and the said collector shall pay said moneys, when collected, over to the receiver instead of to the commissioners of said district, and the collector for such collections shall receive the same compensation as is fixed by state statute.

"And it is further ordered that any person or persons interested in the distribution of the funds of said district, and any creditor of said district, may intervene herein, setting up his claims and filing the same with the receiver for disposition by this court."

The funds now in question ($15,000) are collections of such taxes on the 9.5 per cent. levy basis.

Upon the above facts, the appellant presents the following argument as to the unappropriated balance of benefits ($72,880.79): That, under section 3620, the contractor stands on a parity with the bonds and no lien or right of priority is given the bonds by the governing statutes. That such balance may be used by the district to pay the contractor. That the state courts had jurisdiction to appropriate such balance to payment of the contractor and did do so. That the additional levy (made for payment of the contractor), was recognized (in the above quoted order) by the United States District Court wherein was the receivership; was collected by such receiver and is part of the fund now in question. That this recognition of the levy must be for the purposes of the levy. That this order of levy is binding on the United States court. Therefore, he is entitled to that proportion of the fund represented by the additional levy, equaling 4 per cent. of the 9.5 per cent. collected.

The parties have presented this case as though it were a contest between liens. We think it is not necessary to decide that contest in order to determine this case. Where there seems to be a balance of benefits over the amount necessary to completely care for the bonds, it may be, that under certain conditions, any funds collected therefrom may be used for other purposes of the district. There is, however, a vital condition which seems to govern such appropriations. That condition is that there must not at the time, be a default in the bonds. The case of Faulkner Lake Drainage District v. Williams, 169 Ark. 592, 276 S. W. 604, upon which appellant mainly relies, makes that clear. No other case cited by appellant is as nearly in point as the Williams Case. That condition is absent here. But this, the present case, is a matter of payment from funds of the district rather than of respective liens or, at least, may be decided upon that ground. It is made so by the fact that there is a statute which applies to the *payment* from funds coming to the district "from any source whatever" (section 3634). Neither the district, nor the state court nor the United States court can disregard this requirement, directly or indirectly. It may be that the district or the proper courts may so increase the tax levy that a surplus of collections above the payment requirements of section 3634 may result and such surplus may be devoted to a purpose declared before or after the levy or the collection. If these collections for 1925 had more than sufficed to comply with the prior payments required by section 3634 or if they should hereafter do so, it might well be that appellant would be entitled to such surplus. But no lien or arrangement, before or after levy or collection, can defeat the unequivocal command of the statute as to the order of payment. Since the undisputed facts place appellee unquestionably within that statutory provision and since that provision is clear, we must conclude that the trial court was right.

Therefore, the order must be and is affirmed.