## CANAL CONST. CO. v. FEDERAL LIFE INS. CO. et al.

Circuit Court of Appeals, Eighth Circuit.
October 5, 1927.

No. 7776.

**1. Drains ⬤⟿18—Warrants to secure additional amount to pay contractor held not entitled to payment on parity with bonds to which warrants were expressly subordinated.**

Where drainage district, after discovering cost of improvement would exceed amount as-

certained and to which bonds were issued, executed its warrants for additional amount with assessment to pay such warrants as a lien on lands prior to other liens, save and except the original assessment securing the first issue of bonds, contractor holding such warrants was not entitled to be paid on parity with bonds to which warrants were expressly subordinating.

**2. Drains ⬤⟿18—Warrants not secured by first and paramount lien as bonds previously issued are not payable on parity therewith (Acts Ark. 1903, p. 278).**

Issue of warrants by drainage district in lieu of bonds not secured by any first and paramount lien, as were bonds previously issued by district, are not payable on a parity with such bonds, notwithstanding Acts Ark. 1903, p. 278, providing for issuance of warrants in lieu of bonds by county court.

**3. Drains ⬤⟿18—Contractor receiving warrants with knowledge that bonds previously issued constituted first lien was estopped, as against innocent bondholders, from destroying or impairing lien.**

Where contractor to whom drainage district warrants were issued in payment of additional amount found necessary beyond that realized from bonds previously issued had knowledge or was charged with knowledge by law that the bonds were issued and sold to raise money to pay for making the improvement, and order of county court and recital in bonds that they constituted first and paramount lien on assessment and levies of taxes thereon, it was estopped, as against innocent bondholders, from destroying or impairing lien in attempt to secure payment of warrants on parity with bonds.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by the Federal Life Insurance Company against Drainage District No. 3 of Poinsett County, Ark., wherein the Canal Construction Company intervened. From the decree, the intervener appeals. Affirmed.

Horace Sloan, of Jonesboro, Ark., for appellant.

O. M. Young, of Ft. Smith, Ark. (Charles D. Frierson, of Jonesboro, Ark., on the brief), for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. By properly authorized orders or decrees of the county court of Poinsett county, Ark., made on and prior to July 26, 1909, drainage district No. 3 of that county was created, its limits prescribed, the cost of the organization and location of the district fixed at $4,973.15, the amount necessary to pay all compensation and damages for right of way, supervision of the work, and other ex-

---

penses incident to the completion of the drainage improvements in said district, ascertained to be approximately $9,795.35, and that court adjudged, as the order or decree of July 26, 1909, declares, "that the amount to be paid to the contractor under his contract as aforesaid is $230,231.50; thus it appearing that the total cost of the drainage improvement as aforesaid as hereby ascertained amounts to the sum of $245,000." That decree of July 26, 1909, set forth the special assessment upon each of the lots or tracks of land found benefited in that district, which aggregated a grand total of $245,152.94, and adjudged that "the special assessment levied and confirmed as aforesaid on each of the above-mentioned benefits lots or tracts of land within said district is hereby declared to constitute a first and paramount lien upon such lots or tracts of land to the same extent as other taxes." That decree also adjudged: "for the purpose of anticipating the collection of the installments of said assessments and in order to meet the expenses of constructing the drainage improvements in said drainage district as aforesaid, there shall be and there are hereby ordered and directed to be issued the negotiable coupon bonds of said district," that these bonds should be 390 and be numbered from 1 to 390. It specified the amount, number, date and date of maturity of each bond and provided that bonds aggregating $12,250 should become due on September 1 in each of the years from 1918 to 1937, inclusive. The decree also provided that each of these bonds should contain and it did contain these contracts:

"This bond and the interest coupons hereto attached are payable out of a special assessment duly made and levied upon and apportioned to the lands included within said drainage improvement district and benefited by the drainage improvement aforesaid, and are secured by said special assessment which constitute a first and paramount lien upon all the lands assessed in said drainage district. * * * And it is hereby certified, recited, and warranted * * * that all things, acts, and conditions required by the Constitution and laws of the state of Arkansas, to happen and be done and performed precedent to and in the levy of said special assessment, in order to constitute the same a valid, binding, first, and paramount lien upon all the lands assessed in said drainage district, and in order to constitute this bond and the series of which it forms a part the valid and binding obligations of said drainage district and to secure the payment there-

21 F.(2d)—59

of as aforesaid, have happened and been properly and performed in regular and due form and time as required by law; * * * and that said assessment and the full faith of said drainage district and of the corporate authorities thereof are irrevocably pledged for the payment of the bond and said series of bonds, together with the interest thereon as aforesaid."

The bonds were issued and sold and the proceeds thereof used by the district to pay the contractor for the construction of the improvement and perhaps other liabilities.

On October 15, 1925, the Federal Life Insurance Company, the owner of bonds and coupons of this drainage district, issued and sold under the order and decree aforesaid, then past due to the amount of $20,230, brought a suit in the court below against the drainage district, its officers in charge of its board, and the collector of the revenue of the district, in its own behalf and on behalf of others holding like past-due bonds and coupons, and prayed for a judgment for the amounts past due, for the appointment of a receiver of the assets and affairs of the district and for the levy of an increased assessment. The court appointed W. S. Holt receiver of all the property and income of the district, and on February 15, 1926, on a final hearing of the main case, adjudicated and declared:

"That the series of bonds dated September 1, 1908 (of which the complainant's bonds were a part), issued by said defendant drainage district in the aggregate principal sum of $245,000, * * * are the valid obligations of said drainage district, and that said bonds are duly secured by a first mortgage and pledge on the assessment of benefits of the said district as established by the county court of Poinsett county, Ark."

After the $245,000 bonds of the drainage district had been sold under the orders and decisions of the Poinsett county court and the drainage district had used their proceeds, after the decree of the court below of February 15, 1926, had been rendered and on June 21, 1926, the Canal Construction Company, the contractor with the drainage district for the construction and completion of the drainage improvement, on whose contract the order of July 26, 1909, and the issue and sale of the bonds were based, filed in the suit of the Federal Life Insurance Company against the drainage district and its officers, its petition for leave to intervene in that suit and to have the court below order that the amount due on ten drainage warrants aggregating $4,949, which it had obtained from

the drainage district in September, 1918, in payment for work done under its original contract for constructing and completing the drainage improvement, with interest on said warrants from September 28, 1918, be paid by the receiver on a parity with the bonds of the district. The court below permitted the contractor to intervene, but declined to order its receiver to pay the contractor on the warrants on a parity with the bondholders out of the collections its receiver had made or should make from taxes on the original assessment or others upon which the bonds were secured. It, however, granted the intervener judgment against the drainage district for $4,949 and interest from September 28, 1918.

It is not claimed by counsel for the appellant that the assessments on which the bonds are secured or the bonds themselves are unauthorized or void; it is not claimed by counsel for the appellees that the warrants are unauthorized or void, but they insist and the court below held that the bondholders were secured and held a first and prior lien on the original and subsequent assessments lawfully made to secure and pay their bonds. The warrants rest on the order of the county court made September 28, 1918, about nine years after the bonds were given a first and paramount lien on the assessments and taxes levied thereon which were pledged to secure them. The warrants were induced by the facts that in 1912 the Canal Construction Company, the original contractor and the intervener here, discovered for the first time that the cost of the drainage improvement would be about $20,000 more than the $245,000, which the county court had ascertained and determined it would be and had adjudged in its order of July 26, 1909, it was and would be. State ex rel. Hall v. Canal Construction Co., 134 Ark. 447, 458, 203 S. W. 704. The contractor, after making this discovery, on September 28, 1918, induced the county court to find and adjudge that the drainage district was still indebted to it in the sum of $29,847, and that, "in order to raise funds to pay the said amount, together with the costs of collection, an assessment of .182 cents per acre per annum from each of the years 1919, 1920, and 1921, is hereby levied and assessed upon the betterment accruing to said lands of the first class in said district," and "corresponding amounts per acre on lands of the second and third class, "and the said assessments are hereby declared to be a lien upon said lands paramount to all other liens save and except the original assessment made in this district securing an issue of bonds duly authorized."

[1] Counsel for the contractor argue that all parts of the original indebtedness of the drainage district to the contractor for the construction and completion of the improvement were equally secured by the contract, and that therefore the contractor is still secured on the assessments and the collections therefrom on lands benefited equally with the bondholders and their bonds, notwithstanding the facts which have been stated. But these facts do not seem to us to sustain this contention (1) because the drainage district and the county court did not secure this $29,847 by bonds and a paramount lien on the assessments and revenues as it secured the bonds in 1909, but only by warrants issued many years later in 1918; (2) because the drainage district and the county court did not secure the warrants by the same assessment or assessments or lien or taxes as it did the bonds, but by a separate subsequent assessment ten years later; and (3) because the county court adjudged and declared that the assessment to pay these warrants should be a lien upon the lands in the district prior to all other liens, "save and except the original assessment made in this district securing an issue of bonds duly authorized," thereby expressly subordinating the warrants and their lien, if any, to the bonds and their lien. Kochtitzky v. Mercantile Trust Co. (C. C. A.) 16 F.(2d) 227; Miller v. Hamilton (C. C. A.) 233 F. 402; Ark. La. Highway Imp. Dist. v. Pickens, 169 Ark. 603, 276 S. W. 355.

It is contended that the construction contract was made before the bonds were issued and sold and therefore the $29,847, first discovered by the contractor in 1912 to be necessary to complete the improvement and upon which the county court in 1918 based the warrants, being a part of the original debt of the district was equally secured with the $245,000 expressly secured by the bonds and the first and paramount lien adjudged and pledged to secure them by the order and decree of the county court of July 26, 1909. But this is an argument that one who owes a debt and secures a specific part of it by a mortgage or pledge of property has secured the part not secured by mortgage or pledge to the same extent as the specific part so secured, and it calls for no answer.

[2] It is next contended that Act No. 159 of the Acts of Arkansas 1903, p. 278, provided that, in lieu of bonds the county court might issue warrants payable for ditch assessments and other demands as against the

ditching district. But such an issue of warrants, if made in lieu of bonds, was in this case not secured by any first and paramount lien as were the bonds, and consequently was not payable on a parity with them.

There are other reasons why the denial of the court below to direct the warrants of the contractor to be paid out of the collections of taxes on assessments on the benefits to the lands assessed on a parity with the bonds ought not to be reversed. This controversy is between the contractor and the bondholders whose bonds were and are negotiable and have been on the market at least 15 years. On their face, and on the face of the records of the drainage district which issued them and of the county court which authorized their issue, they were and are secured by a first and paramount lien on the assessment on all the lands in the district to pay for the ditching and draining improvement. The complainant bought its bonds in the open market, relying upon the decree of the county court and the lien secured by that decree and the recitals in the bonds. Other bondholders may have done likewise. The petitioner here is the contractor who more than 15 years ago agreed with the district to make and complete this improvement. The bonds were issued and doubtless sold more than 17 years ago. The contractor first discovered in 1912 that the amount which the county court found and adjudicated to be the cost of the improvement in 1909, and on which finding and adjudication the bonds were issued, was, through a mathematical miscalculation, some $20,000 less than would have been necessary to pay for the entire improvement. The contractor, after that discovery in 1912 and after on February 15, 1926, the court below in this suit by a bondholder against the district made its final decree that these bonds were the valid obligations of the said drainage district and that said bonds were duly secured by a first mortgage and pledge of the assessment of benefits as established by the county court of Poinsett county, Ark., and more than three months after that decree the contractor filed its petition to intervene in this suit and prayed that the chancellor below at that late day should change the rank of the bonds and the warrants and place the latter on a par with the former. As the court well said, there is no equity in this intervening petition or the contractor's claim against these secured bondholders. It had a far better opportunity and better means to ascertain and know the amount required to pay under its con-

tract for the ditching and draining improvement than the complainant or any of the other bondholders could have had. Nothing but conscience, good faith, and reasonable diligence induces a chancellor to grant relief in a case of this nature.

[3] As against the complainant, the bondholder, and other bondholders in its situation, the intervener is estopped from successfully seeking a decree of a court of equity to place its warrants on a parity with the bonds of this district. It derived its compensation for its performance of its contract from the proceeds of these bonds. It knew or was charged with knowledge by the law that the bonds were issued and sold to raise money to pay it for making the improvement, and the order or decree of the county court and the recital in the bonds that they constituted a first and paramount lien on the assessment and the levies of taxes thereon estopped the intervener from destroying or impairing that lien. Road Imp. Dist. No. 7 v. Guardian Sav. & Trust Co. (C. C. A.) 8 F.(2d) 932.

Counsel have presented and discussed, and we have investigated and considered other claims and contentions. But our conclusion is that whatever our opinion or decision of those questions and claims is or might be, for the reasons heretofore stated, the decree of the court below that the prayer of the intervener to share in the proceeds of taxes in the hands of the receiver or to be hereafter collected by the receiver under existing tax issues must be and hereby is affirmed.

Complaint is made because the court below denied the application of the contractor for an additional assessment or levy of taxes in this drainage district to pay the warrants. But the decree of the court provides that this denial is without prejudice to the right of the intervener to make an application for such additional assessment or levy as regards the taxes collected in the year 1927 or thereafter, and the record in this case convinces that, notwithstanding the fact that the court below has twice raised the rate of taxation sufficient taxes have not been and cannot be raised from the levies already made to pay the overdue interest and the overdue bonds of the bondholders before the taxes of 1927 are collected. In this condition of the collections there was in our opinion no error or inequity prejudicial to the contractor in the court's refusal to make the additional assessment or levy which the contractor here seeks.

The decree below must be and it is affirmed.